COMMUNITY STATE BANK OF GALVA, Plaintiff-Appellee, v. HARTFORD INSURANCE COMPANY, Defendant-Appellant.

Third District   No. 3—88—0497

Opinion filed August 15, 1989.

Anthony C. Raccuglia & Associates, of Peru (Cynthia M. Raccuglia, of counsel), for appellant.

Massie & Steele, of Alpha (R. Philip Steele, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:
Defendant-Appellant, Hartford Insurance Company (Hartford), ap-

peals from certain orders entered by the trial court of Henry County granting plaintiff-appellee Community Bank of Galva's (the Bank's) motion for summary judgment and awarding the Bank damages under section 155 of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 767).

Hartford issued to the Bank a banker's benefit bond, No. 85—BPPRR6767, covering a policy period of October 16, 1985, to October 16, 1988. The Bank alleged in its complaint filed March 26, 1987, that on or about August 17, 1986, Leland T. Everett delivered to the Bank a certain power of attorney purportedly executed by Peter S. Craig, trustee, and appointing Leland T. Everett as agent. Craig was the Bank's customer but Everett was not. The Bank then tendered to Everett the sum of $30,000 in consideration of a promissory note executed as Peter S. Craig, trustee, by Leland T. Everett, agent. This note was executed at the request of the Bank at the same time Everett delivered the power of attorney to the Bank's employee Barbara Nelson. There is no dispute that Nelson relied on the purported power of attorney when agreeing to lend money to Everett in exchange for the note. An extension on the remaining $20,000 balance due on the note was later given to Everett by the Bank.

It is undisputed that the power of attorney delivered to the Bank by Everett on August 12, 1985, was a forgery. As such, the Bank turned in a claim under its policy with Hartford for coverage under the blanket bond. Hartford refused coverage, thereby prompting this suit.

The relevant provisions for coverage are listed in the "Insuring Agreements" section of the policy and state as follows:

"Forgery or Alteration

(D) Loss resulting directly from

***

(2) Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, Receipt for the Withdrawal of Property, Certificate of Deposit or Letter of Credit. ***

Securities

(E) Loss resulting directly from the Insured having, in good faith, for its own account or for the account of others:

(1) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of, or otherwise acted upon, any original

* * *

(e) Evidence of Debt

* * *

which

(i) bears a signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent, registrar, acceptor, surety, guarantor, or of any person signing in any other capacity which is a forgery * * *."

The Bank's complaint alleged two counts against Hartford. The first alleged coverage for the loss resulting from reliance on the forged power of attorney and the second alleged an unreasonable and vexatious refusal to settle by Hartford and seeking damages under section 155 of the Insurance Code. (Ill. Rev. Stat. 1987, ch. 73, par. 767.) Cross-motions for summary judgment were filed, and after hearing, the trial court awarded summary judgment to the Bank on both counts against Hartford. Hartford then filed a motion for reconsideration as to the court's ruling that its refusal to settle was unreasonable and vexatious and pointed out to the court that the Bank's attorneys were initially relying on a portion of the insurance policy for coverage different than that relied by the trial court. The motion was denied, and the court thereafter heard testimony regarding damages. The Bank was awarded the balance due on the note plus interest to the date of judgment, attorney fees, costs and $2,500. The court reserved with the Bank the right to subsequently petition the court for additional fees.

Hartford raises two issues on appeal. First (issue 1), whether the trial court erred in granting the Bank's motion for summary judgment and denying Hartford's motion for summary judgment. Second (issue 2), whether the trial court's finding that Hartford's refusal to settle was unreasonable and vexatious, entitling the Bank to damages under the Insurance Code, was against the manifest weight of the evidence. Both parties acknowledge that no material facts are at issue. Summary judgment is clearly the proper remedy in this case.

Regarding issue 1, the trial court found that coverage existed under section E(1)(e) of the insuring agreement. Hartford's principle argument is the Bank relied solely on the forged power of attorney when extending credit and that a power of attorney was not specifically enumerated as covered in subparagraphs D or E quoted above, and therefore, should be exempt from coverage under the exclusions provision of the policy.

The construction of insurance policies presents questions of law to be decided by the court. (*Sawyer Fruit & Vegetable Co-operative Corp. v. Lumbermens Mutual Casualty Co.* (1983), 117 Ill. App. 3d 407, 453 N.E.2d 826.) The language of an insurance policy is to be

liberally construed in favor of the insured and against the insurer. (*Baldwin v. Auto-Owners Insurance Co.* (1972), 5 Ill. App. 3d 300, 282 N.E.2d 204.) Any lack of clarity of an insurance contract is the responsibility of the insurer, and in such circumstances a construction will be adopted favoring the insured and resolving uncertainty in his favor. (*Tiffiny Decorating Co. v. General Accident Fire & Life Assurance Corp.* (1973), 12 Ill. App. 3d 597, 299 N.E.2d 378.) Where the provisions of an insurance contract are clear and unambiguous, however, it is the court's duty to enforce them according to their plain meaning. (*Allstate Insurance Co. v. Panzica* (1987), 162 Ill. App. 3d 589, 515 N.E.2d 1299.) Ambiguity should not be created where none exists. *State Farm Mutual Automobile Insurance Co. v. Byrne* (1987), 156 Ill. App. 3d 1098, 510 N.E.2d 131.

◼ Paragraph (E)(1)(e) provides coverage when an insured, in good faith, extends credit on an evidence of debt that has been forged. The trial court extended coverage under this section on the basis that the promissory note signed by Everett as agent for Craig, trustee, was a forged evidence of debt. Hartford stresses, however, that the note should not be considered, as the Bank alleged in its complaint that it relied solely on the power of attorney when extending credit to Everett. We do not dispute the Bank's contention that reliance solely on the power of attorney, without more, may not be covered under the policy. However, it is not disputed that at the time Everett presented the power of attorney, he was required to execute a promissory note, itself a forgery as that term is defined in the policy, in order to be extended credit. This is verified by Barbara Nelson's uncontradicted affidavit testimony, and it is simply unreasonable to not take the forged note into consideration as well as the power of attorney. It is a general rule of law that instruments executed for the same purpose and in the course of the same transaction will be construed as a single instrument. (*Bogdan v. Ausema* (1962), 33 Ill. App. 2d 294, 179 N.E.2d 401, *Feldman v. Cipolla* (1955), 7 Ill. App. 2d 448, 129 N.E.2d 774.) Not only was the Bank relying on the power of attorney as granting Everett authority to obtain credit in Craig's name, but it was also legally relying on the executed promissory note as consideration for making the loan. The documents were both necessary for Everett to complete his scheme, both delivered contemporaneously to the Bank, and both necessary in order for the Bank to extend credit.

◼ There has been some discussion, however, regarding whether the note is an evidence of debt or a negotiable instrument as those two phrases technically have slightly different meanings under the in-

surance contract. This side issue is irrelevant, however, because if the note is an evidence of debt, coverage is clearly provided under paragraph E(1)(e) of the insuring agreement's section and if the note is considered a negotiable instrument, coverage is clearly provided under paragraph (D)(2) of the insuring agreement.

In *dicta*, had there been no promissory note for whatever reason, coverage solely on the power of attorney appears to be provided under paragraph B(2) of the insuring agreements in that the insured paid funds on the faith of a purported written instruction of a customer.

Issue 2 concerns a discretionary decision by the trial court as to whether Hartford's refusal to settle was unreasonable and vexatious. Section 155 of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 767) provides that if the trial court makes such a finding it may award attorney fees, costs, plus an additional amount within the guidelines provided for in the statute. (See *Songer v. State Farm Fire & Casualty Co.* (1982), 106 Ill. App. 3d 141, 435 N.E.2d 948.) The trial court, in its discretion, determined Hartford's actions or refusal to settle unreasonable and vexatious, and therefore, awarded the Bank its attorney fees, costs and $2,500. The court also reserved any ruling on additional attorney fees.

■ Illinois law is well settled that where issues as to coverage are legitimately raised by an insurer, no hearing based upon an alleged unreasonable denial of claim is in order. (*Kerouac v. Kerouac* (1981), 99 Ill. App. 3d 254, 425 N.E.2d 543.) This is not the case herein. Hartford argues that since the Bank's attorney initially pointed to a clearly irrelevant provision for coverage, Hartford should not be charged with unreasonableness based on its denial of the claim under that section. Moreover, Hartford claims it moved quickly to bring this matter to the summary judgment stage and was first informed of the note at the hearings in this cause. Hartford lastly asserts, based on *Hall v. Svea Mutual Insurance Co.* (1986), 143 Ill. App. 3d 809, 493 N.E.2d 1102, the trial court's award of punitive damages above and beyond attorney fees and costs was clearly erroneous. We disagree with all of Hartford's contentions.

■ Hartford as the drafter of the document is charged with knowing its contents, and therefore, should know the appropriate section for coverage regardless of whether the insured cites other sections for coverage. Moreover, Hartford's claim that it brought the matter to summary judgment quickly is without merit because the unreasonable refusal to settle occurred prior to suit being filed. Also, Hartford's statement that the note was not within its knowledge until

the hearings in this cause is meritless in that a letter dated July 8, 1986, from a Hartford agent to the Bank and attached to Hartford's attorney's affidavit filed May 13, 1988, mentions the very note in question. Lastly, *Hall* concerned a factual dispute regarding coverage and the court therein applied its discretionary authority to award only attorney fees and no additional punitive amounts. In *Hall*, however, underlying facts were disputed and thereafter resolved based on testimony of witnesses. Quite differently, however, this case involved no disputed underlying facts, but only a question of interpretation. In this case, as in *Hall*, the trial court acted within its discretion based on the circumstances before it.

Therefore, the decisions and orders of the trial court are affirmed and the cause is further remanded to the trial court for hearing any motions by the Bank for additional attorney fees expended after the date of the last award.

Affirmed.

WOMBACHER, P.J., and HEIPLE, J., concur.