TRANSAMERICA INSURANCE
COMPANY, Plaintiff–
Appellee,

v.

Ronald M. SOUTH, Roy W. Brunsmann,
Walter E. Jones, Kathleen Jones, and
Iris L. Hannon, Defendants–Appellants.

Nos. 91–1769, 91–1882, 91–1908,
91–1909, 91–2546, 91–2547,
91–2548 and 91–2549.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 25, 1992.

Decided Sept. 11, 1992.

Timothy S. Richards (argued), Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, Ill., for plaintiff-appellee.

Gary L. Bement (argued), Nelson, Bement, Stubblefield & Rich, Steven E. Katzman, Robert O. Crego, Katzman, Crego & Wood, Jim Mendillo, Jeffery A. Cain, Freeark, Harvey, Mendillo, Dennis, Wuller & Buser, Belleville, Ill., Floyd E. Crowder, Curtis W. Martin, Crowder & Scoggins, Columbia, Ill., for defendants-appellants.

Before CUDAHY, COFFEY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Ronald South, an investment advisor in Belleville, Illinois, purchased an errors and omissions policy from Transamerica Insurance Company (Transamerica). The policy contained a clause excluding coverage for claims arising out of the insolvency of any organization in which Mr. South placed the funds of a client. In 1988, Mr. South encouraged several clients to purchase "risk-free" annuities from First Columbia Life

Insurance Company (First Columbia). In fact, although an Illinois state insurance fund guarantees investments with companies that are authorized to do business in Illinois, First Columbia was not authorized to do business in Illinois and, thus, its annuities were not guaranteed. After First Columbia became insolvent, several of Mr. South's clients, who were Illinois domiciliaries, sued Mr. South for negligence and negligent misrepresentation. Transamerica, a California corporation, filed this suit against Mr. South and his clients based upon diversity jurisdiction. Transamerica sought a declaration that it has no duty to defend or indemnify Mr. South for any claims of loss connected with First Columbia annuities. The district court granted Transamerica the relief it requested on summary judgment. Mr. South and his clients appeal, and we affirm.

## I

## BACKGROUND

### A. *Facts*

In 1988, Mr. South was employed as an investment advisor/life insurance agent with First Financial Group of Illinois, Inc., in Belleville, Illinois. Mr. South was covered by an errors and omissions policy, issued by Transamerica, which included a clause excluding coverage for:

> Any claim arising out of insolvency, receivership or bankruptcy of any organization (directly or indirectly) in which the INSURED has placed or obtained coverage or in which an INSURED has placed the funds of a client or account.

R.1 Ex.1 at 9. Between February and September of 1988, Mr. South recommended to several clients the purchase of annuity contracts issued by First Columbia. Allegedly, Mr. South told his clients that the First Columbia annuities were guaranteed and risk-free. Mr. South was apparently unaware that First Columbia did not hold a certificate of authority to transact insurance in Illinois, allegedly because of its poor financial condition. If First Columbia had been authorized to do business in Illi-

nois, the Illinois Insurance Guarantee Fund would have guaranteed the investments. Allegedly, had Mr. South checked with the Illinois Department of Insurance before recommending the annuities, he would have learned that First Columbia was not authorized to do business in Illinois and that First Columbia was in poor financial condition.

On November 18, 1988, a Louisiana state court declared First Columbia to be insolvent and granted the Louisiana Insurance Commissioner's request to liquidate the company. Subsequently, several of Mr. South's clients, Walter E. Jones, Kathleen Jones, William J. Hecht, Barbara Hecht, Roy W. Brunsmann, Iris I. Hannon, and William Flach, all Illinois domiciliaries, filed suit against Mr. South to recover the lost amounts of their investments. These clients alleged that Mr. South was negligent in failing to investigate the financial stability and authorization status of First Columbia and in misrepresenting the security of the investments.

Presented with the defense of these claims, Transamerica brought this suit in the United States District Court for the Southern District of Illinois, under its diversity jurisdiction, requesting a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Transamerica has no duty to defend or indemnify Mr. South for any claims of loss connected with First Columbia annuities. The parties filed cross-motions for summary judgment, and the district court heard oral argument on the motions on March 1, 1991. The remaining facts concerning proceedings in the district court are presented below.

## II

## ANALYSIS

### A. *Jurisdiction*

We must first determine what parties and which issues are properly before us. In order to do so, it is necessary to state clearly the timing and substance of the motions filed and orders handed down in the district court. All the relevant events occurred in 1991.

### 1. Early proceedings in the district court

On March 22, the district court granted summary judgment in favor of Transamerica and against each of the defendants. In addition to a five-page opinion, the court entered a formal judgment simply stating the following:

> IT IS ORDERED AND ADJUDGED that summary judgment is entered in favor of the plaintiff, TRANSAMERICA INSURANCE COMPANY, and against defendants RONALD M. SOUTH, WALTER E. JONES, KATHLEEN JONES, WILLIAM J. HECHT, BARBARA J. HECHT, ROY W. BRUNSMANN, IRIS I. HANNON, and WILLIAM FLACH.

R.43. Between April 1 and April 11, Mr. South, Mr. Brunsmann, Mr. and Mrs. Jones, and Ms. Hannon filed notices of appeal from the court's March 22 judgment. On April 16, this court entered an order stating that a preliminary review of the record had revealed that the March 22 judgment neglected to supply the declaratory relief requested and, therefore, appeared not to be an appealable judgment. *See Metropolitan Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1222 (7th Cir. 1991). The order directed the appellants to file a memorandum within two weeks stating why the appeal should not be dismissed for lack of jurisdiction.

On April 26, the district court held a hearing in response to this court's order. At the conclusion of the hearing, the district court entered an amendment *nunc pro tunc* to its previous order, directing the clerk to enter judgment in favor of Transamerica, including a statement of declaratory relief and a fee award. The same day, April 26, an amended judgment was drafted, signed, and entered on the docket.[1]

On May 3, Transamerica filed with the district court a motion, pursuant to Federal Rule of Civil Procedure 59(e), to amend the April 26 judgment in order to clarify what it perceived to be an ambiguity. On May 10, the court granted Transamerica's motion and entered an order to amend the judgment *nunc pro tunc* as to March 22. An amended judgment was drafted, signed, and entered on the docket the same day, May 10. On May 17, Mr. South filed a notice of appeal from the May 10 judgment. On May 23, Mr. Brunsmann also filed a notice of appeal from the May 10 judgment. Neither Mr. Jones, Mrs. Jones, nor Ms. Hannon filed a timely notice of appeal from the May 10 judgment. Thus:

March 22 District court enters judgment that simply grants summary judgment to Transamerica.

April 1–11 Mr. South, Mr. Brunsmann, Mr. and Mrs. Jones, and Ms. Hannon filed notices of appeal from the court's March 22 judgment.

April 26 District court holds hearing in response to this court's April 16 order. At the conclusion of the hearing, the district court orders the clerk to amend the March 22 judgment, *nunc pro tunc* as to March 22, to provide a statement of declaratory relief and a fee award.

May 3 Transamerica files Rule 59(e) motion to state more clearly the declaratory relief provided on April 26.

May 10 District court grants Transamerica's Rule 59(e) motion and orders the clerk to enter a second amended judgment, *nunc pro tunc* as to March 22.

May 17 Mr. South files notice of appeal from May 10 amended judgment.

May 23 Mr. Brunsmann files notice of appeal from May 10 amended judgment.

We must now address whether all of the parties who originally filed notices of appeal are properly before this court, and whether the district court had jurisdiction to grant Transamerica's May 3 Rule 59(e) motion. Central to both of these issues is the question: What is the effective date of the final judgment?

---

**1.** Between April 29 and May 10, the appellants filed with this court jurisdictional memoranda stating that, because of the district court's April 26 *nunc pro tunc* order and judgment, the district court's March 22 judgment was a final, appealable judgment. On May 22, 1991, this court acknowledged receipt of the memoranda and set a briefing schedule.

## 2. Final judgment

■ On April 16, this court entered an order stating that a preliminary review of the record had revealed that the March 22 judgment neglected to supply the declaratory relief requested and, therefore, appeared not to be an appealable judgment. Further study has confirmed our suspicion: Transamerica's complaint requested declaratory relief and, while the district court granted summary judgment in favor of Transamerica on March 22, the court failed to provide the declaratory relief requested. This omission rendered the March 22 judgment non-final and unappealable. *See Metropolitan Life Ins. Co. v. Estate of Cammon,* 929 F.2d 1220, 1222 (7th Cir.1991) ("This document ... neglected to supply the declaratory relief Metropolitan Life requested—for that matter, to provide any relief. It was accordingly not an appealable judgment."); *Foremost Sales Promotions, Inc. v. Director, BATF,* 812 F.2d 1044, 1045 (7th Cir.1987) ("The district judge must select the language of the declaratory judgment and issue the order.").

The district court acknowledged this problem and corrected it on April 26 by amending the March 22 judgment *nunc pro tunc* to include a statement of declaratory relief. This was sufficient to produce a final judgment, but generated a new concern: Can such a substantive amendment have effect *nunc pro tunc* such that the effective date of the final judgment is March 22? If so, then the ten-day limit for filing a Rule 59(e) motion to alter or amend the final judgment—including the declaratory relief crafted on April 26—expired on April 1, three weeks before the April 26 amendment. This would mean that, as appellants now contend, Transamerica's May 3 Rule 59(e) motion to amend was time-barred and the April 1–11 notices of appeal were effective.

■ The answer to this query turns on the scope of the district court's authority to give an order retroactive, or *nunc pro tunc,* effect. As a general rule, district courts may issue *nunc pro tunc* orders "to show what was actually done but not properly or adequately recorded." *LeBeau v. Taco Bell, Inc.,* 892 F.2d 605, 609 n. 3 (7th Cir.1989). *See United States v. Taylor,* 841 F.2d 1300, 1308 (7th Cir.) ("A court may issue a *nunc pro tunc* order to correct the record so that it reflects what was actually done but never recorded due to clerical inadvertence."), *cert. denied,* 487 U.S. 1236, 108 S.Ct. 2904, 2905, 101 L.Ed.2d 937 (1988). Thus, a *nunc pro tunc* order is typically used to correct clerical or ministerial errors or a failure of the court to reduce to judgment what it stated orally or in an opinion. *See LeBeau,* 892 F.2d at 609 (making explicit that dismissal was with prejudice); *Local 1545, United Mine Workers v. Inland Steel Coal Co.,* 876 F.2d 1288, 1292 n. 4 (7th Cir.1989) ("the *nunc pro tunc* order is a correction of a clerical error"); *Krull v. Celotex Corp.,* 827 F.2d 80, 82 (7th Cir.1987) ("We believe this subsequent memorialization of an oral decision may be appropriately considered here as *nunc pro tunc.*"). As a general rule, however, the district court may not make substantive changes affecting parties' rights *nunc pro tunc.* As this court stated in *King v. Ionization International, Inc.,* 825 F.2d 1180, 1188 (7th Cir.1987), "[t]he office of a *nunc pro tunc* ('now for then') order is to clean up the records by showing what was previously done with effect from the time done; it is not to alter substantive rights." As the Tenth Circuit stated in *W.F. Sebel Co. v. Hessee,* 214 F.2d 459, 462 (10th Cir.1954), "[t]he Latin phrase is merely descriptive of the inherent power of the court to make its records speak the truth—to record that which was actually done, but omitted to be recorded. It is no warrant for the entry of an order to record that which was omitted to be done." *See also United States v. Daniels,* 902 F.2d 1238, 1240 (7th Cir.) ("A judge may correct a clerical error at any time.... But he may not rewrite history."), *cert. denied,* — U.S. ——, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *Crosby v. Mills,* 413 F.2d 1273, 1277 (10th Cir.1969) ("An order may be entered nunc pro tunc to make the record speak the truth but it cannot supply an order which in fact was not previously made."); *Board of Educ. v. Admiral Heating & Ventilation, Inc.,* 525 F.Supp. 165, 168 (N.D.Ill.

1981) ("It is familiar doctrine that a *nunc pro tunc* order is not a permissible synonym for retroactivity but rather is limited to current correction of the record to speak an earlier truth: an order made earlier but not formally entered.").[2]

■ As stated, the March 22 order was not a final judgment. It neglected to supply the declaratory relief requested. The April 26 order created the substance as well as the language of the declaratory relief. The April 26 order added an essential missing element to the March 22 order and, in the process, transformed a non-final judgment into a final judgment. Thus, the April 26 order effected a substantial change in the rights of the parties, rather than correcting a clerical error or memorializing something that was actually done but never recorded. Such a substantial change cannot have effect *nunc pro tunc.* Thus, the effective date of the April 26 order was April 26.

3. The effect of Transamerica's 59(e) motion

■ On May 3, seven days after the district court amended its judgment on April 26, Transamerica filed a Rule 59(e) motion to alter or amend the April 26 judgment. Appellants contend that the district court lacked jurisdiction to entertain Transamerica's May 3 motion, because the April 26 *nunc pro tunc* amendment made the March 22 judgment final and thus made April 1 (ten days after March 22) the last day upon which a Rule 59(e) motion to amend that judgment could be filed, and

the April 1–11 notices of appeal were effective to transfer jurisdiction to the court of appeals. Because we have concluded that the April 26 amendment did not take effect *nunc pro tunc* on March 22 but, rather, took effect on April 26, we also conclude that Transamerica's Rule 59(e) motion was timely. Thus, the district court did have jurisdiction to entertain Transamerica's Rule 59(e) motion, which, as a valid Rule 59(e) motion, wiped out any prior notices of appeal.[3] Fed.R.App.P. 4(a)(4). As Mr. South and Mr. Brunsmann were apparently aware, Fed.R.App.P. 4(a)(4) requires appellants to file a fresh notice of appeal after the court enters an order granting or denying a Rule 59(e) motion. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982). Because Mr. and Mrs. Jones (No. 91–1908) and Ms. Hannon (No. 91–1909) failed to file a notice of appeal after the May 10 amended judgment, we dismiss their appeals for want of jurisdiction. *See Weiglos v. Commonwealth Edison Co.,* 892 F.2d 509, 511–12 (7th Cir.1989).

Thus, we are left with the April 26 final judgment, as amended by the May 10 order, and three parties: appellants Mr. South and Mr. Brunsmann, and appellee Transamerica.

B. *The Merits*

The central issue in this case is whether the claims filed against Mr. South fall within the policy exclusion relied upon by Transamerica.

---

**2.** A less common form of *nunc pro tunc* order, which is an exception to these general rules, is used when a court has spent an undue amount of time deliberating and thereby has caused the parties prejudice or harm. An extreme, although common, example is when a party dies while the case is under advisement. *See Cuebas y Arredondo v. Cuebas y Arredondo,* 223 U.S. 376, 390, 32 S.Ct. 277, 281, 56 L.Ed. 476 (1912) ("Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court; or a decree in a cause which is under advisement when the death of a party occurs."); *Mitchell v. Overman,* 103 U.S. 62, 64–65, 26 L.Ed. 369 (1880) ("[W]here the delay in rendering a judgment or a decree arises from the act of the court ... it is the duty of the court to see that the parties shall not suffer by the

delay."); *Middleton v. Dan River, Inc.,* 617 F.Supp. 1206, 1222 (M.D.Ala.1985) ("A court's power to enter judgment nunc pro tunc where a party has died derives from Anglo–American common law, symbolized by the maxim, 'the act of the court shall prejudice no one.' "), *affirmed in relevant part,* 834 F.2d 903, 911 (1987). Because neither party has alleged undue delay by the court in the present case, this form of *nunc pro tunc* is not relevant.

**3.** We need not resolve definitively whether the April 1–11 notices of appeal were valid at any point in the litigation. Arguably, although filed prematurely, they became valid pursuant to Fed.R.App.P. 4(a)(2) upon the entry of the amended judgment on April 26.

### 1. Legal principles

■ We review de novo a district court's grant of summary judgment. *Doe v. Allied–Signal, Inc.*, 925 F.2d 1007, 1008 (7th Cir.1991). We " 'must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion.' " *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990) (quoting *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989)). While any inferences drawn from the facts must be viewed in the light most favorable to the non-moving party, only reasonable inferences need be drawn. *Hermes v. Hein*, 742 F.2d 350, 353 (7th Cir.1984); *Korf v. Ball State Univ.*, 726 F.2d 1222, 1226 (7th Cir.1984). Our task is to determine whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Neither party raises a conflict of laws issue in this diversity case, thus the governing law is that of the forum state, Illinois. *Wood v. Mid–Valley Inc.*, 942 F.2d 425, 426–27 (7th Cir.1991).

■ Under Illinois law, "[t]he construction of insurance policies presents questions of law to be decided by the court." *Community State Bank v. Hartford Ins. Co.*, 187 Ill.App.3d 110, 134 Ill. Dec. 810, 812, 542 N.E.2d 1317, 1319 (1989); *see also FSC Paper Corp. v. Sun Ins. Co.*, 744 F.2d 1279, 1286 (7th Cir.1984) (Coffey, J., dissenting) (collecting cases). When an exclusionary clause in an insurance policy is relied upon to deny coverage, its applicability must be clear and free from doubt. *Insurance Co. v. Markogiannakis*, 188 Ill. App.3d 643, 136 Ill.Dec. 307, 309, 544 N.E.2d 1082, 1094 (1989). Where there is ambiguity in the insurance policy, all exclusions, conditions, or provisions which tend to limit or defeat liability should be construed most favorably to the insured. *Economy Fire & Cas. Co. v. Bassett*, 170 Ill.App.3d 765, 121 Ill.Dec. 481, 483, 525 N.E.2d 539, 541 (1988). A provision in an insurance policy is ambiguous if it is sub-

ject to more than one reasonable interpretation. *Id.* 121 Ill.Dec. at 484, 525 N.E.2d at 542. Nonetheless, courts will not create an ambiguity where none exists; if a provision is clear and unambiguous there is no need for construction and the provisions will be applied as written. *Id.; Menke v. Country Mut. Ins. Co.*, 78 Ill.2d 420, 36 Ill.Dec. 698, 700, 401 N.E.2d 539, 541 (1980). In determining whether an ambiguity exists, the provision in question must be read in its factual context, not in isolation. *Economy Fire*, 121 Ill.Dec. at 484, 525 N.E.2d at 542. All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists. *United States Fire Ins. Co. v. Schnackenberg*, 88 Ill.2d 1, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981). The burden of showing that a claim falls within an exclusion rests with the insurer for two reasons: (1) the insured's intent in purchasing an insurance policy is to obtain coverage, therefore any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent, and (2) the insurer is the drafter of the policy and could have drafted the ambiguous provision to be clear and specific. *Economy Fire & Cas. Co. v. Kubik*, 142 Ill.App.3d 906, 97 Ill.Dec. 68, 71, 492 N.E.2d 504, 507 (1986).

### 2. Applied to this case

The policy at issue has two principal components: the statement of coverage, and the list of exclusions. The statement of coverage provides:

> In consideration of the payment of the premium ... the Company ... agrees with the NAMED INSURED as follows:
>
> . . . .
>
> To pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as DAMAGES because of:
>
> A. Any act, error or omission of the INSURED, or any person for whose acts the INSURED is legally liable in rendering or failing to render PROFESSIONAL SERVICES for others in

the conduct of the NAMED IN-SURED's profession as a licensed Life Agent, Broker, General Agent or Manager....

B. Any real or alleged failure in rendering or failing to render PROFESSIONAL SERVICES under the Employee Retirement Income Security Act of 1974 ... or the Investment Companies and Advisors Act of 1940....

C. A PERSONAL INJURY caused by an offense arising out of rendering or failing to render PROFESSIONAL SERVICES for others in the conduct of the NAMED INSURED's profession....

....

D. Any actual or alleged failure of a General Agent or Manager covered by this Policy to supervise, manage or train any INSURED.

R.1 Ex.1 at 1–2. The list of exclusions states:

This Policy does not apply to:

I. Any act, error, or omission or PERSONAL INJURY of the INSURED committed with dishonest, fraudulent, criminal or malicious purpose or intent....

II. Bodily injury, sickness, disease or death of any person, or to injury or destruction of any tangible property including loss of use thereof.

....

VII. Any claim, based upon a loss arising out of the INSURED making promises or guarantees as to the future value of an investment.

....

X. Any claim arising out of, or contributed to by, any co-mingling of, or use of, client funds.

XI. Any claim arising out of DAMAGES which are expected or intended by the INSURED.

XII. Any claim arising out of insolvency, receivership or bankruptcy of any organization (directly or indirectly) in which the INSURED has placed or obtained coverage or in which an INSURED has placed the funds of a client or account.

XIII. Any claim arising out of the INSURED's activities in computer programming or processing if the resulting programs are sold or distributed or if a fee is charged for the use of the program.

....

XVII. Any claim based solely upon a loss alleged to have been sustained through fluctuation in market value of any security.

R.1 Ex.1 at 8–10.

 The issue is whether, in light of the terms of the policy that Transamerica issued to Mr. South and the factual context of the claims brought by Mr. Brunsmann and others, those underlying claims fall within the insolvency exclusion. As was the district court, we are convinced that it is clear and free from doubt that the claims do fall within the exclusion: they arise out of the insolvency of an organization (directly or indirectly) in which the insured placed the funds of a client. Had First Columbia been solvent, the fact that it was not authorized to transact business in Illinois would have been of no import: under Illinois law, although an insurer is not authorized to do business, all contracts with that insurer are still valid and enforceable. Ill.Rev.Stat. ch. 73, ¶ 733–4 (1992).[4] Mr. Brunsmann and Mr. South suggest that there still would be claims of misrepresentation because the investment would not be guaranteed by the state fund. But any such claims would be meritless because the plaintiffs would have suffered no injury and therefore could claim no damage from such a misrepresentation, by itself. Thus, we conclude that the claims directly arise from First Columbia's insolvency and are within the insol-

4. The statute provides, in relevant part:
§ 121-4. Validity of contracts—Court actions. The failure of an insurer transacting business in this State to obtain a certificate of authority does not impair the validity of any act or contract of that insurer nor does it prevent the insurer from any action in any court in this state.

vency exclusion.[5]

Mr. South and Mr. Brunsmann submit that the exclusion is ambiguous and should be interpreted in favor of coverage. They correctly note that, when the phrase "arising out of" has appeared in coverage clauses, Illinois courts have held that the phrase is "both broad and vague, and must be liberally construed in favor of the insured." *Maryland Casualty Co. v. Chicago & N.W. Transp. Co.*, 126 Ill.App.3d 150, 81 Ill.Dec. 289, 292, 466 N.E.2d 1091, 1094 (1984).[6] They argue that, by a parity of reasoning, when the phrase appears in an exclusion clause, it also should be construed in favor of coverage by giving the same words a narrow, rather than broad, interpretation. In the context of this case, this argument, even if valid, would be of no benefit to the appellants. The phrase in question is modified in the exclusionary clause by the phrase "directly or indirectly." Reading the two phrases together, the clause excludes coverage for claims that directly or indirectly arise out of the insolvency of any organization in which Mr. South has placed the funds of a client. Read thus, the clause includes claims, such as that brought by Mr. Brunsmann, in which the insolvency of an invested-in organization directly or indirectly causes the injury upon which the claim is based.

■ Appellants also submit that Mr. Brunsmann's claim against Mr. South had two proximate causes, the insolvency of First Columbia and Mr. South's negligence, one of which is covered and one excluded, and thus the entire claim must be covered under the principle announced in *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co. (USF & G I)*, 107 Ill.App.3d 190, 63 Ill.Dec. 14, 437 N.E.2d 663 (1982), and *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co. (USF & G II)*, 152 Ill.App.3d 46, 105 Ill. Dec. 254, 504 N.E.2d 123, *appeal denied*, 115 Ill.2d 551, 110 Ill.Dec. 466, 511 N.E.2d 438 (Ill.1987) (collectively *USF & G*). In these two connected cases, Happyland Day Care Center had purchased from USF & G insurance against claims "caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises." *USF & G I*, 63 Ill.Dec. at 15–16, 437 N.E.2d at 664–65. The insurance policy excluded claims "arising out of the ownership, maintenance, operation, use, loading or unloading of any ... automobile or aircraft owned or operated by any person in the course of his employment by any insured." *Id.*, 63 Ill.Dec. at 16, 437 N.E.2d at 665. While some of the children were being driven from the day care center to a dance class, a child was injured when she "fell from, was thrown from, or otherwise exited" the automobile. *Id.* A two-count complaint was filed on behalf of the child against the insured day care center. Count I alleged that the owner or employees of the day care center were negligent in operating the day care center: that they failed to care adequately for the children, failed to retain control and discipline over the children, and failed to supervise adequately the children. Count II alleged that the

---

**5.** Although there are no Illinois cases on point, our conclusion is consonant with decisions of other state courts faced with similar policy language and circumstances. *See Kleneic v. White Lake Marine Corp.*, 144 A.D.2d 341, 533 N.Y.S.2d 909 (1988); *Barron v. Scaife*, 535 So.2d 830 (La.Ct.App.1988); *St. Paul Fire & Marine Ins. Co. v. Cohen–Walker, Inc.*, 171 Ga.App. 542, 320 S.E.2d 385 (1984).

**6.** In *Maryland Casualty*, the Illinois Appellate Court wrote:
> The phrase "arising out of" is both broad and vague, and must be liberally construed in favor of the insured; accordingly, "but for" causation, not necessarily proximate causa-

tion, satisfies this language. "Arising out of" has been held to mean "originating from," "having its origin in," "growing out of" and "flowing from."

81 Ill.Dec. at 292, 466 N.E.2d at 1094 (citations omitted). *See also Consolidated Rail Corp. v. Liberty Mut. Ins. Co.*, 92 Ill.App.3d 1066, 48 Ill.Dec. 485, 488, 416 N.E.2d 758, 761 (1981) ("The words 'arising out of' have been construed frequently in workmen's compensation claims and in insurance litigation to mean that a mere causal connection suffices to bring facts within the ambit of an insurance clause which is prefaced with that phrase.") (collecting cases).

defendants negligently operated the automobile and failed to provide adequate safety devices to protect the child passengers. USF & G brought a declaratory judgment action seeking to establish that it did not owe a defense or coverage to the day care center. The Illinois courts ruled against USF & G. The Illinois Appellate Court determined that the injury was caused by two independent, proximate causes: the negligence of the day care center to supervise the children and the negligence of the day care employees in operating the vehicle. The court then held:

> If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy.

*USF & G II*, 105 Ill.Dec. at 256, 504 N.E.2d at 125. Because USF & G could not prove that the automobile-related negligence was the sole proximate cause of the injury, the court ruled that the claim was covered and thus USF & G had a duty to defend (*USF & G I*) and to indemnify (*USF & G II*).

*USF & G* must be read together with *Allstate Insurance Co. v. Pruitt ex rel. Pruitt*, 177 Ill.App.3d 407, 126 Ill.Dec. 716, 532 N.E.2d 401 (1988), which limits the applicability of the *USF & G* principle to cases in which the two causes of injury are wholly independent of one another. In *Pruitt*, Allstate Insurance Company issued to Roy Pruitt, Sr., a homeowner's insurance policy, which included coverage for personal injury damages caused by a member of the household. However, the policy contained a clause excluding bodily injury damages "arising out of the ownership, maintenance, use, loading or unloading of any motorized land vehicle or trailer." *Pruitt*, 126 Ill.Dec. at 717, 532 N.E.2d at 402. After Pruitt's son, Roy Jr., ran into a man while riding his motorized mini-bike, the injured man sued Roy Jr. for negligence in operating the mini-bike, and he sued Roy Sr. for negligent failure to supervise his son. The insurance company sought a declaration that it was not obligated to defend or indemnify the Pruitts. Relying on *USF & G I*, the Pruitts argued that "the separate and distinct allegation of failure to supervise may be covered even in a case where negligent operation is also alleged and excluded." *Pruitt*, 126 Ill.Dec. at 718, 532 N.E.2d at 403. The Illinois Appellate Court distinguished *USF & G I* as a case in which "the underlying complaint described acts of alleged negligence and theories of recovery wholly independent from those relating to the allegedly negligent operation of the automobile." *Id.*, 126 Ill.Dec. at 718–19, 532 N.E.2d at 403–04. In contrast, the claim of negligent supervision against Pruitt was "based solely on the minor's ownership and operation of the mini-bike." *Id.* Because Roy Sr. was negligent only if Roy Jr. was, the excluded cause predominated and the claim was not covered. *See also State Farm Fire & Cas. Co. v. Mann*, 172 Ill.App.3d 86, 122 Ill.Dec. 130, 134, 526 N.E.2d 389, 393 (1988) ("the [*USF & G I*] court limited its holding to cases where the actionable event could be proved independent of the excluded motor vehicle"); *Allstate Ins. Co. v. Panzica*, 162 Ill.App.3d 589, 114 Ill.Dec. 28, 30, 515 N.E.2d 1299, 1301 (1987) ("Under Illinois law it is clear that where the instrumentality which causes the injury is excluded, no liability coverage is afforded for negligent entrustment of the instrumentality. This is because an injury resulting from the use of the instrumentality is a necessary element of the cause of action."), *appeal denied*, 119 Ill.2d 553, 119 Ill.Dec. 381, 522 N.E.2d 1240 (1988); *State Farm Fire & Cas. Co. v. McGlawn*, 84 Ill.App.3d 107, 39 Ill.Dec. 531, 533, 404 N.E.2d 1122, 1124 (1980) (finding negligent entrustment claim excluded because derivative of excluded underlying negligence claim).

The appellants are correct to point out that Mr. South's failure to investigate First Columbia is a second cause of their injury, along with First Columbia's insolvency. But these two causes are not wholly independent: Mr. South's negligence depends upon the insolvency of First Columbia. If

First Columbia were healthy and solvent, Mr. South would not be liable for negligence; even if he breached a duty owed to his clients, that breach would have caused no injury and thus would not support a claim for recovery.[7] Thus, because the excluded cause predominates, this case is more closely analogous to *Pruitt* than to the *USF & G* cases. As did the Illinois Appellate Court in *Pruitt*, we conclude that, under the terms of the policy, the insurer has no duty to defend or indemnify the insured.

■ One final argument made by Mr. South is that the district court erred in granting Transamerica's May 3 Rule 59(e) motion to amend insofar as it extended the declaratory judgment to cases not yet filed against Mr. South and/or claims against Mr. South as yet unknown. This extension, contends Mr. South, precludes coverage for potential claims that might involve the sale of First Columbia annuities but, because of circumstances peculiar to such unfiled lawsuits, do not "arise out of" First Columbia's failure and liquidation.

We cannot accept Mr. South's argument for two reasons. First, the May 10 declaration did not expand the scope of the April 26 declaration. Rather, the May 10 declaration clarified the scope of the April 26 declaration. The April 26 declaration states that Transamerica has no duty to defend or indemnify Mr. South for "any

and all claims of loss ... including claims made by" the named defendants.[8] The May 10 declaration states that Transamerica has no duty to defend Mr. South for (A) "any and all claims of loss," and (B) "any and all claims of loss ... asserted by" the named defendants.[9] The May 10 declaration is no more inclusive than the April 26 declaration: they both extend to "any and all claims of loss" related to First Columbia annuities, including the claims brought by the named defendants.

Second, Mr. South argues that the declaration "could be interpreted to preclude coverage to Ronald South for any claims concerning annuities issued through First Columbia Life Insurance Company *regardless of the cause.*" Appellant's Reply Br. at 8 (emphasis in original). Such an interpretation would be unreasonable given that the district court's decision in this case rests upon the insolvency exclusion, which states:

This Policy does not apply to:

. . . .

XII. Any claim arising out of insolvency, receivership or bankruptcy of any organization (directly or indirectly) in which the INSURED has placed or obtained coverage or in which an INSURED has placed the funds of a client or account.

A. Plaintiff, Transamerica Insurance Company, has no duty to indemnify or defend defendant, Ronald M. South, his agents, predecessors, successors or assigns for any and all claims of loss for the sale, solicitation or recommended purchase of annuity contracts issued by First Columbia Life Insurance Company; and
B. Plaintiff Transamerica Insurance Company, has no duty to indemnify or defend defendant, Ronald M. South, his agents, predecessors, successors or assigns for any and all claims of loss for the sale, solicitation or recommended purchase of annuity contracts issued by First Columbia Life Insurance Company asserted by Walter E. Jones, Kathleen Jones, William J. Hecht, Barbara J. Hecht, Roy W. Brunsmann, Iris I. Hannon and William Flach; ....
R.58.

---

7. *Gouge v. Central Ill. Pub. Serv. Co.,* 144 Ill.2d 535, 163 Ill.Dec. 842, 845, 582 N.E.2d 108, 111 (1991) ("To state a cause for negligence, a complaint must allege facts sufficient to show the existence of a duty, a breach of that duty, and injury to the plaintiff which is proximately caused by that breach.").

8. The April 26 declaration provided, in relevant part:
Plaintiff, Transamerica Insurance Company, has no duty to indemnify or defend defendant, Ronald South, his agents, predecessors, successors or assigns for any and all claims of loss for the sale, solicitation or recommended purchase of annuity contracts issued by First Columbia Life Insurance Company, including claims made by Walter Jones, Kathleen Jones, William Hecht, Roy Brunsmann, Iris Hannon and William Flach.
R.55.

9. The May 10 declaration provided, in relevant part:

R.1 Ex.1 at 9. The district court ruled that this clause excludes coverage for liability stemming from Mr. South's failure to investigate properly the financial soundness of First Columbia. While the focus of the case was sharpened by the substance of the complaints filed against Mr. South by the other named defendants, there was no need to distinguish one complaint from another: they all alleged that Mr. South was negligent to encourage investors to purchase annuities from an insolvent company. The declaratory judgment simply states that Transamerica has no duty to defend or indemnify Mr. South for any and all such claims. Given the ordinary preclusive effect that a judgment on the particular claims presented would have upon future litigation between Transamerica and Mr. South, we fail to see how the declaratory judgment prejudices Mr. South's right to future coverage for claims unrelated to First Columbia's insolvency.[10]

### Conclusion

For the foregoing reasons, the judgment of the district court in favor of Transamerica is affirmed.

AFFIRMED

CUDAHY, Circuit Judge, concurring.

I write separately only because the identification of causes of action as "wholly independent" or not "wholly independent" seems to me very difficult. It is by no means clear to me that the facts before us are closer to the negligent supervision and negligent entrustment cases than to *United States Fidelity & Guarantee Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill.App.3d 46, 105 Ill.Dec. 254, 504 N.E.2d 123 (1987), in which a child attending a daycare center was thrown from an automobile. The two causes of action alleged in that case were negligent operation of the center and negligent operation of the vehicle. Those two claims involved contemporaneous, joint or alternative sets of *different* facts. By contrast, in the negligent supervision and entrustment cases such as *Allstate Insurance Co. v. Pruitt*, 177 Ill.App.3d 407, 126 Ill.Dec. 716, 532 N.E.2d 401 (1988), and *Allstate Insurance Co. v. Panzica*, 162 Ill.App.3d 589, 114 Ill.Dec. 28, 515 N.E.2d 1299 (1987), the underlying facts involving negligent operation of the instrumentality at issue are essentially the *same* as those alleged in the supervision and entrustment claims. The latter claims are derivative of the former, so that the same underlying facts are simply restated against a different party. *Pruitt*, 126 Ill.Dec. at 719, 532 N.E.2d at 404.

The two causes of action in the case before us appear to involve neither the same facts, nor contemporaneous or alternative sets of different facts, but *consecutive* sets of different facts. First, First Columbia must be insolvent in order to bring about the loss. Then, since First Columbia was not authorized to do business in Illinois (and Mr. South because of his negligence was not aware of this fact) the Illinois Insurance Guarantee Fund does not make good the loss. The facts surrounding these two causes are related but they certainly are not essentially identical as in the negligent supervision cases; the second cause of action is not derivative of the first in the same sense.

Hence, I think it is very difficult to predict how Illinois courts would treat the facts that are before us. Based on the rule of *contra preferentem* (strict construction against the insurer that drafted the policy), I think it entirely possible that the Illinois courts would not reach the result favored by the majority here. But, of course, one cannot be sure.

---

**10.** *See also Keene Corp. v. Insurance Co. of N. Am.*, 667 F.2d 1034, 1040 (D.C.Cir.1981) (upholding declaratory judgment regarding duty to defend and indemnify in cases not yet filed), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir.1981) ("Declaratory suits to determine the scope of insurance coverage have often been brought independently of the underlying claims albeit the exact sums to which the insurer may be liable to indemnify depend on the outcome of the underlying suits.").