**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-50087
_____

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,
                         Plaintiff-Counter Defendant-Appellant,

versus

BAPTIST HEALTH SYSTEM,
                         Defendant-Counter Claimant-Appellee.

_____

BAPTIST HEALTH SYSTEM,
                                        Plaintiff-Appellee,

versus

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,
                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

December 5, 2002

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and DAVIS,
District Judge.[*]

EDITH BROWN CLEMENT, Circuit Judge:

    Baptist Health System ("BHS") alleges losses of $876,545.37

_____

    [*]Judge Leonard E. Davis, U.S. District Judge for the Eastern
District of Texas, sitting by designation.

1

due to fraudulent invoices submitted by vendor Marshall R. Shepherd d/b/a Medical Resource Assistance ("Shepherd"). Travelers Casualty & Surety Company of America ("Travelers") denied coverage and filed for declaratory judgment. BHS counterclaimed and moved for partial summary judgment on its breach of contract claim. Travelers made a counter motion for summary judgment. Finding the relevant language in the insurance contract ambiguous, the district court granted BHS's motion for partial summary judgment. For the reasons stated below, we find the contract language unambiguous and its reasonable interpretation in Travelers' favor. The judgment of the district court is reversed and judgment is rendered for Travelers.

## I. Facts

Shepherd learned and took advantage of BHS's internal procedures for paying supplier invoices. During the time Shepherd acted fraudulently against BHS, namely between January 1997 and April 1999, Shepherd was supposed to submit invoices to BHS's financial services department. One or two BHS managers in that department would approve payment on received invoices, sign their initials on the documents (often with words such as "o.k. to pay"), and send the invoices to the accounts payable department. Upon receipt of a signed invoice, the accounts payable department paid the supplier. According to BHS, a signed invoice was an instruction to the employees in the accounts payable department to pay the invoice. The accounts payable department did not have discretion to refuse payment on an invoice signed by the financial

2

services department.

Shepherd defrauded BHS by creating invoices for work never performed, forging the signatures of BHS managers on the invoices, and, instead of submitting the invoices to BHS's financial services department, hand delivering them directly to accounts payable. Believing the signatures were genuine, BHS's accounts payable department sent Shepherd checks in the amounts indicated in the invoices, which allegedly totaled $876,545.37.

BHS had a Crime policy with Aetna Casualty & Surety Company ("Aetna") for the period of August 31, 1996, to August 31, 1998, and a Crime PLUS+ policy with Travelers for the period of August 31, 1998, to August 31, 1999. The Aetna coverage was cancelled upon issuance of the Travelers policy. Prior to the inception of BHS's claim, Travelers acquired Aetna's business and succeeded to the rights and obligations under the Aetna policy.

Upon discovering Shepherd's fraud, on May 6, 1999, BHS filed a Proof of Loss to Travelers for coverage under the Travelers and Aetna policies. Asserting that the fraudulent invoices were not (1) "covered instruments" (2) "drawn upon" BHS as required by the insurance contract, Travelers denied coverage under both policies. Travelers filed for declaratory judgment in federal court, asking that the court find that Travelers had no duty to indemnify BHS on the relevant Proof of Loss. BHS counterclaimed for breach of contract as well as violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act and sued Travelers in state

3

court making the same claims. The state case was removed to federal court and consolidated with the declaratory action.

BHS moved for summary judgment on the breach of contract claim and Travelers filed a cross motion for summary judgment. The cross motions for summary judgment covered the same basic issue and material facts were not disputed. BHS alleged that coverage existed under the policy's plain meaning or, alternatively, that the policy was ambiguous and thus should be strictly construed in favor of BHS. See State Farm Fire & Cas. Co. v. Reed, 873 S.W.2d 698, 699 (Tex. 1993) ("[I]f a contract of insurance is susceptible to more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction most favorable to the insured." (internal footnote and citation omitted)). Travelers maintained that the policy was unambiguous and that its plain meaning did not allow coverage. Finding the relevant contract language ambiguous, the district court granted BHS's motion for partial summary judgment and denied Travelers' motion for summary judgment. BHS dismissed the extra-contractual claims and filed a motion for statutory interest under the Texas Insurance Code and for attorney's fees and costs. The district court awarded statutory interest, pre-judgment interest, post-judgment interest, and attorney's fees and entered a final judgment disposing of all claims. Although Travelers properly appealed the grant of BHS's motion for partial summary judgment, it did not appeal the denial of its motion; nonetheless, because both parties' motions covered

4

the same issues, we have jurisdiction to review the grant and the denial. See Ranger Ins. Co. v. Estate of Mijne, 991 F.2d 240, 241 (5th Cir. 1993).

## II. Analysis

We review summary judgment rulings de novo, Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp., 198 F.3d 548, 550 (5th Cir. 2000), and apply the same standard as the district court. Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405, 408 (5th Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We view all evidence and factual inferences in the light most favorable to the party opposing the motion. Price v. Federal Exp. Corp., 283 F.3d 715, 719 (5th Cir. 2002). We review de novo the district court's determination of state law, Salve Regina College v. Russell, 499 U.S. 225, 239 (1991), as well as its interpretation of the insurance contract. Potomac Ins. Co., 198 F.3d at 550.

Because Shepherd's fraudulent activity occurred during the coverage periods of both the Travelers and Aetna policies, we must consider both. Since the slight differences in the contract language at issue in each policy are irrelevant, we focus on the Travelers policy. Any conclusion we make regarding that policy also applies to the Aetna policy.

The relevant portion of the Travelers policy states:

5

II. Forgery or Alteration
We will pay for loss resulting directly from "Forgery"
or alteration of, on or in "Covered Instruments" that
are:
1. Made or drawn by or drawn upon you; or
2. Made or drawn by one acting as your agent;
or that are purported to have been so made or drawn
. . . .
"Covered Instruments" means checks, drafts, promissory
notes or similar written promises, orders or directions
to pay a sum certain in "Money."
"Forgery" means the signing of the name of another
person or organization with intent to deceive, it does
not mean a signature which consists in whole or in part
of one's own name signed with or without authority, in
any capacity for any purpose.

The Aetna policy reads:

A. Coverage
We will pay for loss involving Covered Instruments
resulting directly from the Covered Causes of Loss.
1. Covered Instruments: Checks, drafts, promissory
notes, or similar written promises, orders or
directions to pay a sum certain in "money" that are:
a. Made or drawn by or drawn upon you;
b. Made or drawn by one acting as your agent; or that
are purported to have been so made or drawn.
2. Covered Causes of Loss: Forgery or alteration of, on
or in any "Covered Instrument."

The district court ruled that in light of the surrounding circumstances the terms "covered instruments" and "drawn upon" were ambiguous. The district court rejected Travelers' assertion that the definition of "covered instruments" included only negotiable instruments because the contract did not expressly use the term negotiable. Since the forged invoices clearly were not "made or drawn by or drawn upon" BHS or its agents nor "purported to have been so made or drawn," we do not have to consider whether the definition of "covered instruments" must expressly use the term

6

negotiable to exclude non-negotiable instruments.

The district court found the phrase "drawn upon you" ambiguous and read it to include the forged invoices. The court relied upon Omnisource Corp. v. CNA/Transcon. Ins. Co., 949 F. Supp. 681 (N.D. Ind. 1996), to find "that a reasonable interpretation of the phrase ["drawn upon you"] is to trace the payment on the forged instruments to the ultimate source of liability for any money paid in reliance on the forged instruments." To reach such a conclusion, the district court adopted Omnisource's use of the dictionary definition of "drawn" rather than the more limited legal and commercial usage of the term. See id. at 689 ("[T]he phrase 'draw upon' is susceptible to at least two interpretations. 'Draw' is defined as, *inter alia*, '[t]he act of a drawer in creating a draft. To draw a bill of exchange, check, or draft, is to write (or cause it to be written) and sign it; to make, as a note.' Black's Law Dictionary (6th ed. 1996). The term also, however, means the following: '[t]o withdraw money; i.e., to take out money from a bank, treasury, or other depository in the exercise of a lawful right and in a lawful manner,' id.; '[t]o use or call upon part of a fund or store. Used with "on" or "upon,"' American Heritage Dictionary of the English Language 397 (Family ed. 1979).").

Since the district court ruling, we have rejected Omnisource's expansive reading of the term "drawn" as used in insurance contract

clauses nearly identical to the one in the Travelers and Aetna policies.  See Parkans Int'l LLC v. Zurich Ins. Co., 299 F.3d 514, 517 (5th Cir. 2002).  Like the policy in Parkans International, the Travelers policy "uses the term 'drawn' in the context of the specific listed instruments and 'similar . . . promises, orders or directions to pay.'  In the commercial paper context the phrases 'drawn by' and 'drawn upon' are not ambiguous and have a definite legal meaning.  A contract term that can be given a definite or certain legal meaning is not ambiguous.  We will not therefore interpose multiple dictionary usages."  Id. (internal citation omitted).

The forged invoices were not made, drawn by, or drawn upon BHS as those terms are used in the commercial paper context or under the Uniform Commercial Code.  The addition of forged signatures to the invoices did not create instruments on which a party could demand payment from a bank.  In the commercial context, BHS is not a "maker" or "drawer" of the forged invoices.[1]

It is true that BHS's bank took funds from BHS's account to pay the checks written to Shepherd in amounts indicated in the

---

[1] Definitions that fall in line with common commercial use include: A "maker" is "a person who signs or is identified in a note as a person undertaking to pay."  TEX. BUS. & COMM. CODE § 3.103(a)(5) (Vernon Supp. 2002).  A "drawer" is "a person who signs or is identified in a draft as a person ordering payment."  TEX. BUS. & COMM. CODE § 3.103(a)(3).  A "drawer" is "one who directs a person or entity, usually a bank, to pay a sum of money stated in an instrument-for example, a person who writes a check; the maker of a note or draft."  Black's Law Dictionary 510 (7th Ed. 1999).

forged invoices.  However, the checks were not forged and do not fall within the contract provision.  We could only conclude that the checks fall within the provision or that the invoices were drawn upon BHS if we determined that the checks and forged invoices should be treated as one instrument instead of as separate instruments.  Courts have occasionally bundled documents in situations in which the bank demanded all involved documentation to extend credit or honor a draft.  See, e.g., Omnisource, 949 F. Supp. at 686-688; Community State Bank of Galva v. Hartford Ins. Co., 542 N.E.2d 1317, 1320 (Ill. App. Ct. 1989) (viewing as a single instrument all of the documents on which a bank relied in extending credit).  Even if we were to recognize the legitimacy of bundling in such contexts, we would distinguish the invoices forged by Shepherd.  To pay the checks drawn upon BHS, the bank did not have to receive the invoices; the bank demanded no supporting documents to honor the checks.  We decline to treat the checks and forged invoices as one instrument.  The invoices were only prerequisites insofar as internal BHS procedure made them such. They were not required by law or the bank.

## III. Conclusion

The judgment of the district court is reversed and judgment is rendered for Travelers denying all relief to BHS.