**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-1441**

---

AMERICAN AUTOMOBILE INSURANCE COMPANY,

Plaintiff - Appellant,

versus

ARNOLD H. VALENTINE; LEWIS H. WADE; MICHAEL
REQUA,

Defendants - Appellees,

CHRISTOPHER HOLROYD; GILLIAN HOLROYD; AMERICAN
AVK COMPANY; MARY B. GUNNELLS; WILLIAM A.
GUNNELLS; MARY PARKER; STYLON OF CHARLESTON;
NANCY STANLEY, JR.; JAMES E. WISE; MARK B.
BUXTON; OAKLAND CLUB; LAZER CONSTRUCTION
COMPANY INCORPORATED,

Intervenors/Defendants - Appellees.

---

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, District
Judge.  (CA-00-2952-23-2)

---

Argued:  February 4, 2005            Decided:  May 13, 2005

---

Before NIEMEYER and MICHAEL, Circuit Judges, and Samuel G. WILSON,
United States District Judge for the Western District of Virginia,
sitting by designation.

---

Reversed and remanded by unpublished per curiam opinion.

---

**ARGUED:** Sandra Denise Hauser, SONNENSCHEIN, NATH & ROSENTHAL, L.L.P., New York, New York, for Appellant. Justin O'Toole Lucey, Mount Pleasant, South Carolina; Justin S. Kahn, Charleston, South Carolina, for Appellees. **ON BRIEF:** Martin P. Michael, Robert P. Mulvey, SONNENSCHEIN, NATH & ROSENTHAL, L.L.P., New York, New York; Susan Batten Lipscomb, NEXSEN, PRUET, ADAMS, KLEEMEIER, L.L.C., Columbia, South Carolina, for Appellant. Christian H. Hartley, RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, L.L.C., Charleston, South Carolina; Robert Waldrep, Jr., WALDREP & STODDARD, Anderson, South Carolina; Mary Leigh Arnold, Mt. Pleasant, South Carolina; J. Calhoun Watson, Columbia, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

American Automobile Insurance Company (AAIC) sued three insurance brokers with whom it had entered into insurance contracts. AAIC sought a declaratory judgment that it had no obligations under the insurance contracts to provide professional liability coverage for suits brought against the brokers by their former clients. After a trial before the district court and an advisory jury, the court entered an order concluding that AAIC was obligated under the insurance contracts to defend and indemnify the brokers. For the following reasons, we reverse and remand.

I.

AAIC provides errors and omissions and professional liability insurance coverage to insurance brokers. The defendants in this case are three insurance brokers who entered into insurance contracts with AAIC. The insuring clause in the contracts provides that AAIC shall pay "all sums which the INSURED shall become legally obligated to pay as DAMAGES because of . . . any act, error, or omission of the INSURED . . . in rendering or failing to render PROFESSIONAL SERVICES," J.A. 46, and that AAIC shall defend the brokers from lawsuits relating to their errors and omissions. The contracts also contain exclusionary clauses, three of which are relevant in this case. These clauses provide that there is no coverage for

[1] Any claim arising out of the insolvency, receivership, bankruptcy, liquidation or financial inability to pay of any organization in which the INSURED has (directly or indirectly) placed or obtained coverage or in which an INSURED has (directly or indirectly) placed the funds of a client or account or in which any person has invested as a result of consultation with INSURED.

[2] Any claim arising from or contributed to by the placement of coverage with Multiple Employer Welfare Arrangements as defined in the Employee Retirement Income Security Act of 1974 (and any amendments thereto).

[3] Any claim arising from or contributed to by the placement of a client's coverage or funds directly or indirectly with any organization which is not licensed to do business in [South Carolina].

J.A. 56.

The brokers sold and marketed to various individuals a health insurance and dental plan (the Plan). The Plan was marketed in South Carolina from approximately August 1996 to June 1999, and premiums under the Plan were paid to the International Worker's Guild Health & Welfare Trust Fund (the Fund), which was administered by The Fidelity Group, Inc. Though the Plan was marketed as a valid ERISA plan, it was really a Multiple Employer Welfare Arrangement (MEWA), a much riskier type of health insurance plan. In South Carolina an organization that wishes to sell a self-insured MEWA like the Plan here is required to maintain certain reserve levels, obtain stop-loss insurance to protect against catastrophes, and have a certain number of trustees to provide oversight and protection. It appears that the Fund asserted that the Plan was a valid ERISA plan in order to avoid

4

these requirements.  Further, the Fund was never licensed to transact insurance business in South Carolina.

The Fund eventually became insolvent, having assets of less than $250,000 and liabilities of $30,000,000.  J.A. 235.  The participants, left with no coverage for their medical claims, sued the brokers, the ones who had sold them coverage under the Plan. The participants brought a number of different suits (hereinafter referred to as "the underlying suits") against the brokers, all seeking recovery of unpaid medical claims and related damages.  The participants allege that the brokers engaged in fraud and negligence and in other violations of state and federal law in their marketing and selling of the Plan.

After the underlying suits were brought, AAIC filed its own suit against the brokers in the United States District Court for the District of South Carolina.  AAIC, relying on the exclusionary clauses, sought a declaratory judgment that AAIC (1) "has no obligation [under the insurance contracts] to pay any further amounts to [the brokers] for any defense in connection with the underlying [suits] at issue or any future related [suits] for which the [the brokers] may claim coverage," and (2) "has no obligation to defend or pay any amounts to [the brokers] for any indemnification of them in connection with the underlying claims or any future related claims."  J.A. 43-44.  AAIC also sought a judgment "providing for a reimbursement of any and all defense

5

costs already expended by [AAIC] in connection with the underlying [suits]" as well as attorney's fees, costs, and disbursements in the present action. J.A. 43-44. Jurisdiction was based on the diversity of the parties. See 28 U.S.C. § 1332(a).

The case was eventually tried before a jury, although in mid-trial the district court designated it an advisory jury under Fed. R. Civ. P. 39(c). The jury found that the underlying suits arose out of (1) the insolvency of the Fund, (2) the brokers' placement of coverage with a MEWA, and (3) the brokers' placement of coverage with an organization not licensed to do business in South Carolina. Nevertheless, the jury returned a verdict for the brokers because it determined that none of these causes was the "dominant, efficient cause" of the underlying suits. J.A. 2319-2322. The district court then made its own factual findings, consistent with the jury's, and determined that the exclusionary clauses do not bar coverage of the underlying suits. Because the underlying suits are covered by the insuring provision of the contract, the district court concluded, AAIC has a duty to defend and indemnify the brokers. AAIC now appeals.

II.

On appeal AAIC argues that the district court misconstrued South Carolina law regarding exclusionary clauses in insurance contracts. For the following reasons, we agree and reverse the district court's order.

6

A.

Under South Carolina law "[p]arties to a contract of insurance have the right to make their own contract." Sphere Drake Ins. Co. v. Litchfield, 438 S.E.2d 275, 277 (S.C. Ct. App. 1993). Because insurance policies are contracts, the "cardinal rule" in interpreting them is "to ascertain and give effect to the intention of the parties and, in determining that intention . . . [to] look[] to the language of the contract." Id. The language in an exclusionary clause is accorded its ordinary meaning. See Long Motor Lines, Inc. v. Home Fire & Marine Ins. Co. of Cal., 67 S.E.2d 512, 516 (S.C. 1951). "[A]n insurer has no duty to defend an insured where the damage was caused for a reason unambiguously excluded under the policy." B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999). At the same time, however, in order for an exclusionary clause to bar coverage, there must exist a "causal connection" between the excluded risk and the loss. S.C. Ins. Guar. Ass'n v. Broach, 353 S.E.2d 450, 450-51 (S.C. 1987). "The rationale of [this] rule is that 'when the parties made the contract of insurance, they were not inserting a mere arbitrary provision, but it was the purpose of the insurance company to relieve itself of liability from accidents caused by the excluded provision.'" Id. (quoting S.C. Ins. Co. v. Collins, 237 S.E.2d 358, 361-62 (S.C. 1977)).

After applying these basic principles of South Carolina law to AAIC's insurance contract, we conclude that the exclusionary clause dealing with insolvency unambiguously bars coverage with respect to the underlying suits. This clause excludes coverage for

> Any claim arising out of the insolvency, receivership, bankruptcy, liquidation or financial inability to pay of any organization in which the INSURED has (directly or indirectly) placed or obtained coverage or in which an INSURED has (directly or indirectly) placed the funds of a client or account or in which any person has invested as a result of consultation with INSURED.

J.A. 56. The plain terms of this exclusionary clause make it clear that AAIC and the brokers intended that insurance coverage should not extend to suits against the brokers premised on their placement of client funds with an insurance company that is unable to pay the participants' claims for coverage. And that is exactly the basis for the underlying suits against the brokers. While the participants allege a host of legal claims, they are, at bottom, seeking damages for unpaid medical claims, claims that went unpaid because the Fund became insolvent. Because a causal connection exists between the excluded risk (the placement of clients funds with an insolvent organization) and the underlying suits, we conclude that the brokers' claims for coverage fit squarely within the exclusionary clause relating to insolvency. See Broach, 353 S.E.2d at 451. Therefore, the brokers are not entitled to coverage for the underlying suits.

The district court reached the opposite conclusion, and we will explain why we disagree with that court's analysis. The district court properly found that the brokers (1) placed client funds with an insolvent organization, (2) placed client funds with a MEWA, and (3) placed client funds with an organization not licensed to do business in the state of South Carolina. The district court concluded, however, that AAIC was not protected by any of the exclusionary clauses because AAIC failed to establish that the excluded risks were the proximate cause of the participant's losses. Relying on Lesley v. American Security Insurance Co., 199 S.E.2d 82 (S.C. 1973), the district court interpreted South Carolina law as requiring an insurance company to prove that the excluded risk was the proximate cause of the losses suffered by the insured in order for an exclusionary clause to bar coverage. To establish proximate cause, the district court reasoned, the insurance company must establish that the excluded risk was the dominant cause (the cause that sets in motion the other causes). After finding that AAIC had failed to establish that the excluded risks were the dominant cause of the brokers' losses, the district court held that AAIC was required to provide coverage for the underlying suits.

The district court erred because South Carolina law does not require an insurance company to establish that a specifically excluded risk was the proximate cause of the loss suffered by the

9

insured in order for an exclusionary clause to apply. The district court's reliance on Lesley is misplaced because that case concerned the interpretation of an insuring clause, not an exclusionary clause. In Lesley a farmer's chickens died from excessive heat when the fans in his chicken house failed for about four hours. 199 S.E.2d at 84. The fans failed because a severe thunderstorm (and related lightning) had interrupted the supply of electrical power. The issue was whether the farmer's loss fell within the insuring clause, which provided coverage for losses "immediately resulting from . . . lightning." Id. The court stated that in order to be covered, the farmer had to prove that the lightning proximately caused the death of the chickens. An insured, the court reasoned, could prove proximate cause by demonstrating that the peril insured against was either the nearest efficient cause (the cause closest in time or place) or the dominant cause of the loss. Id. at 85. The court held that there was sufficient evidence to conclude that the dominant cause of the farmer's loss was the lightning, as it caused the power failure. Id. 84-85.

Lesley would be relevant if this case was about whether the brokers' losses arose out of the insuring clause of the insurance contract, that is, whether the losses arose out of "[a]ny act, error, or omission . . . in rendering or failing to render [professional services]." J.A. 46. However, the issue is not whether the brokers are entitled to coverage under the insuring

10

clause; it is whether they are barred from coverage by the exclusionary clauses. Nothing is said in Lesley that implies that its rule of causation applies to exclusionary clauses, nor have we found any South Carolina case applying Lesley's rule of causation to exclusionary clauses. As insuring and exclusionary clauses serve diametric purposes (one provides coverage while the other limits it), we see no reason why the rule of causation for insuring clauses should be applied to exclusionary clauses. Further, an application of Lesley's proximate cause rule to exclusionary clauses would be inconsistent with much more recent South Carolina precedent, which requires only that there be a "causal connection" between the excluded risk and the loss. See Broach, 353 S.E.2d at 450-51. While the South Carolina courts have not precisely articulated the meaning of the term "causal connection," it appears that the term refers to a causal relationship that may be less direct or immediate than Lesley-type proximate cause. See, e.g., McPherson v. Mich. Mut. Ins. Co., 426 S.E.2d 770, 772 (S.C. 1993) (concluding that exclusionary clause bars coverage of otherwise covered conduct because "without the [excluded risk], there is no link by which the [covered conduct] can be independently connected to [the losses]"). In sum, we conclude that the exclusionary clause relating to insolvency unambiguously bars coverage of the broker's claims stemming from the underlying suits and that the district court erred in ruling to the contrary.

11

B.

The brokers argue that AAIC is barred from arguing against a requirement of proximate cause on appeal because it had earlier agreed to jury instructions supporting such a requirement. The proposed jury instructions were filed two weeks before trial with the district court. AAIC correctly counters that it (1) raised objections to the proximate cause requirement throughout trial, (2) sought to have the instructions modified at the charge conference before the jury was instructed, (3) raised its objections again after the jury rendered its verdict and before it was excused, and (4) raised its objections a final time when it moved for the district court to reconsider its decision. We agree with AAIC that it has not waived this argument.

Finally, the brokers offer two alternative grounds for affirming the district court's order. They first argue that rulings made by the South Carolina state courts and admissions by AAIC in those proceedings bar relitigation of the issue of causation under the Rooker-Feldman doctrine and the doctrine of collateral estoppel. See D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923). They also argue that the doctrine of reasonable expectations, which places the burden on the insurer to clearly communicate the terms of coverage, bars application of the exclusionary clauses. The district court considered these arguments and committed no error in rejecting them.

12

III.

For the foregoing reasons, we reverse the district court's order determining that AAIC is obligated under the insurance contract to defend the brokers against the underlying suits and to indemnify them for any losses.  Because the exclusionary clause relating to insolvency bars coverage, AAIC is entitled to a declaratory judgment that it (1) has no obligation under the insurance contract to pay any further amounts to the brokers for any defense in connection with the underlying suits or any future related suits for which the brokers may claim coverage, and (2) has no obligation to defend or pay any amounts to the brokers for any indemnification in connection with the underlying suits or any future related suits.  On remand the district court should consider AAIC's request for (1) the reimbursement of defense costs already expended by it in connection with the underlying suits, and (2) attorney's fees, costs, and disbursements in the present case.

REVERSED AND REMANDED

13