

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| WILLIAM R. IMLER, AS SUCCESSOR TRUSTEE OF THE VIRGINIA L. IMLER TRUST, | ) ) ) | WD77362 |
| | ) | |
| Appellant, | ) | OPINION FILED: |
| | ) | November 25, 2014 |
| v. | ) | |
| | ) | |
| FIRST BANK OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Janet L. Sutton, Judge

Before Division Three:  Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

William R. Imler, as successor trustee of the Virginia L. Imler Trust ("Imler Trust"), appeals the grant of summary judgment in favor of First Bank of Missouri ("First Bank") and its employee Salvator DiMiceli ("DiMiceli") (collectively "Defendants") in connection with the Imler Trust's lawsuit which sought damages following First Bank's foreclosure of property owned in part by the Imler Trust.  Because the Defendants have not established a right to judgment in their favor as a matter of law, we reverse the grant of summary judgment and remand this matter for further proceedings.

## Factual and Procedural Background

In January 2007, the Imler Trust acquired a 50% interest in real property located in Wyandotte County, Kansas ("Property"), from American Equities, L.L.C., a Missouri limited liability company ("American Equities").[1] As a result of the transaction, the Imler Trust and American Equities each owned a one-half interest in the Property. In November 2007, American Equities sought a loan from First Bank. The loan was to be collateralized, in part, by a mortgage on the Property.[2] That mortgage could not be secured without the Imler Trust's signature on the mortgage. The Imler Trust, through its then trustee Virginia Imler ("Ms. Imler"), signed the mortgage, a trust certificate, and other documents related to the loan transaction. The Imler Trust was not asked to sign, however, the promissory note evidencing the extension of credit by First Bank to American Equities. At the time of the loan transaction, Ms. Imler lived in California. The documents she was required to sign on behalf of the Imler Trust were sent to her in California.

The loan to American Equities went into default in August 2009. First Bank filed a lawsuit to foreclose the Property in the District Court of Wyandotte County, Kansas ("Foreclosure Lawsuit"). The Foreclosure Lawsuit named American Equities as a defendant and sought judgment against American Equities for its default on the promissory note secured by the Property. The Foreclosure Lawsuit also named the Imler Trust as a defendant. However, no personal judgment was sought against the Imler Trust.

---

[1] The nature of the relationship between the Imler Trust and the members of American Equities, if any, is not apparent from the record, and is not material to this appeal.

[2] It appears from the record that the loan to American Equities was also collateralized by property owned by American Equities and in which the Imler Trust did not have an interest.

Rather, First Bank sought only to have its mortgage declared a first and prior lien over and above any interest claimed by the Imler Trust in the Property and to have that lien foreclosed. First Bank attempted service on the Imler Trust by registered mail to a post office box in California. A return receipt signed by "R. M. Hodgdon" was filed in the Foreclosure Lawsuit to evidence service on the Imler Trust. The record does not indicate who "R. M. Hodgdon" is or that person's relationship to Ms. Imler or to the Imler Trust.

Neither American Equities nor the Imler Trust filed an answer in the Foreclosure Lawsuit. The judgment entered in the Foreclosure Lawsuit declared First Bank's mortgage to be a first and prior lien on the Property, authorized foreclosure of the mortgage on the Property, and provided that First Bank "have and recover an *in rem* judgment against" American Equities and the Imler Trust for the unpaid balance of the promissory note, interest therein, and other costs.

In September 2011, the Imler Trust filed suit against American Equities and its principals ("American Equities Lawsuit"). Among other things, the Imler Trust alleged that American Equities fraudulently misrepresented the purpose of the loan from First Bank to induce the Imler Trust to consent to a mortgage on the Property. The Imler Trust alleged that Ms. Imler had been told that the purpose of the loan was to permit development of the Property from which she would financially benefit, when the real purpose of the loan was to refinance debt American Equities was carrying from other business ventures in which the Imler Trust did not have an interest. The Imler Trust secured a default judgment against American Equities and its principals in the American Equities Lawsuit.

3

In February 2013, William R. Imler ("Mr. Imler"), as successor trustee of the Imler Trust,[3] filed the instant lawsuit against First Bank and DiMiceli. The suit alleged claims for misrepresentation, negligent misrepresentation, and fraudulent misrepresentation.[4] Similar to the allegations made in the American Equities Lawsuit, the Imler Trust alleged that First Bank, through its employee DiMiceli, represented to Ms. Imler that the purpose of the loan to American Equities was to permit development of the Property, when the real purpose of the loan was to refinance other debt held by American Equities.

The Defendants filed a motion for summary judgment alleging a right to judgment as a matter of law on all of the claims alleged in the Imler Trust's lawsuit. The Defendants alleged in the motion that: (i) the Imler Trust was estopped to assert all of its claims as they should have been asserted as compulsory counterclaims in the Foreclosure Lawsuit; (ii) the Imler Trust was judicially estopped to assert all of its claims against the Defendants as they are inconsistent with allegations made in the American Equities Lawsuit; and (iii) the trust certificate and mortgage signed by the Imler Trust authorized use of the Property for any debt incurred by American Equities and precluded the Imler Trust from establishing reliance, an essential element of its claims.

The Imler Trust opposed the motion for summary judgment and alleged that: (i) it had not been properly served with process in the Foreclosure Lawsuit as to require it to assert compulsory counterclaims against the Defendants; (ii) that its representations in the American Equities Lawsuit were not inconsistent with those asserted against the

---

[3]By the time the instant lawsuit was filed, Ms. Imler had passed away, and Mr. Imler became the successor trustee.

[4]The Imler Trust also asserted a claim for violation of the Missouri Uniform Fiduciary Act, but later dismissed that claim.

4

Defendants; and (iii) that language in the trust certificate and mortgage relied on by the Defendants does not support the legal conclusion that the Imler Trust could not establish reliance on the Defendants' representations about the purpose for the loan.

On February 24, 2014, the trial court entered a judgment that granted the Defendants' motion for summary judgment without findings of fact or conclusions of law ("Judgment"). The Imler Trust filed this timely appeal.

**Standard of Review**

Our Supreme Court set out the standard of review for the grant of summary judgment in *Goerlitz v. City of Maryville*:

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Only genuine disputes as to material facts preclude summary judgment. *Id.* at 378. A material fact in the context of summary judgment is one from which the right to judgment flows.
>
> A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of facts necessary to support movant's properly pleaded affirmative defense." *Id.* at 381. Each of these three methods individually "establishes the right to judgment as a matter of law." *Id.* . . .

5

. . . "The record below is viewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." . . . *Hammack v. Coffelt Land Title, Inc.*, 284 S.W.3d 175, 177-78 (Mo. App. W.D. 2009) (internal quotations and citations omitted). *See also ITT Commercial Fin.*, 854 S.W.2d at 376.

333 S.W.3d 450, 452-53 (Mo. banc 2011).

Here, the Judgment does not identify the basis on which it was entered. "Where a trial court has granted summary judgment without specifying the basis upon which the motion was granted, this court will affirm the grant of summary judgment under any appropriate theory." *Central Missouri Elec. Co-Op. v. Balke*, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003) (citation omitted). "[A] trial court[] . . . is presumed to have based its decision on the grounds specified in [the] motion if the trial court's order does not set forth its reasoning." *Id*. (citation omitted).

**Analysis**

The Imler Trust raises five points on appeal claiming error in the grant of summary judgment. The Imler Trust argues that: (i) it was never properly served in the Foreclosure Lawsuit and thus had no obligation to assert compulsory counterclaims against First Bank; (ii) the claims asserted in this case would not have been compulsory counterclaims in the Foreclosure Lawsuit even assuming proper service of process; (iii) the claims asserted in this case are not judicially estopped because they are not clearly and ambiguously inconsistent with the claims asserted in the American Equities Lawsuit; (iv) neither the trust certificate or the mortgage contain language authorizing First Bank to extend a loan to American Equities for any purpose as to preclude the Imler Trust from

6

establishing reliance on representations about the purpose for the loan; and (v) even assuming summary judgment could be properly entered as to First Bank, it could not be entered as to DiMiceli because he was not a party in the Foreclosure Lawsuit, and the mortgage and trust certificate include no representations purporting to have been made to him individually.  We address the points in order, combining discussion of Points One and Two.

### Points One and Two: The Imler Trust was not Obligated to Assert Compulsory Counterclaims in the Foreclosure Lawsuit because it was an In Rem Proceeding

The Defendants alleged in their answer and in their motion for summary judgment that the Imler Trust's claims are barred because they were compulsory counterclaims that should have been asserted in the Foreclosure Lawsuit.  "The compulsory counterclaim rule is an affirmative defense." *First Community Credit Union v. Levison*, 395 S.W.3d 571, 579 (Mo. App. E.D. 2013).  A defending party may establish a right to summary judgment by demonstrating "that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense." *ITT Commercial Fin.*, 854 S.W.2d at 381 (emphasis in original).

The Foreclosure Lawsuit was instituted in Kansas.  Kansas law thus applies to determine whether the Imler Trust was obligated to assert counterclaims against First Bank in that action.  K.S.A. 60-213(a)[5] provides:

---

[5]This statute was amended in 2010, the same year that the judgment was entered in the Foreclosure Lawsuit.  The statute as amended is materially the same as the earlier version, and merely restructured the content of the statute.

(a) *Compulsory counterclaims.* (1) *In general.* A pleading must state as a counterclaim any claim that, at the time of its service, the pleader has against an opposing party if the claim: (A) Arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

(2) *Exceptions.* The pleader need not state the claim if: (A) When the action was commenced, the claim was the subject of another pending action; or (B) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this section.

Thus, to establish the compulsory counterclaim affirmative defense in this action, the Defendants are obliged to demonstrate that the claims herein asserted arose out of the same transaction or occurrence as the subject matter of the Foreclosure Lawsuit, and that neither of the exceptions set forth in K.S.A. 60-213(a)(2) applied to the Foreclosure Lawsuit. The Imler Trust argues that its claims herein asserted did not arise out of the same transaction or occurrence as the subject matter of the Foreclosure Lawsuit (Point Two), and that even if they did, the Imler Trust was not required to assert the claims in the Foreclosure Lawsuit because it was not properly served (Point One).

"The Kansas rule on counterclaims is patterned after Federal Rule of Civil Procedure 13 . . . ." *In re Thomas*, 362 B.R. 478, 484 (10th Cir. BAP 2007). Similar to K.S.A. 60-213(a)(2)(B), Federal Rule 13(a)(2)(B) also establishes an exception to the compulsory counterclaim rule where "the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule." This exception has been interpreted to apply to *in rem* proceedings.

8

> [W]here the principal demand is filed *in rem*, a party has the *option* either to assert a counterclaim in the *in rem* proceeding or to assert it in a separate proceeding. If a party exercises his option to not file a compulsory counterclaim in an *in rem* proceeding, he is not foreclosed by Rule 13(a) from asserting it in a separate proceeding. On the other hand, if a party does wish to assert a compulsory counterclaim in an *in rem* proceeding, Rule 13(a) does not prohibit the filing of a compulsory counterclaim.

*Old Hickory Barge & Fleeting, Inc. v. Barge M-553*, 107 F.R.D. 689, 690 (D.C. La. 1985) (citing 3 Moore's Federal Practice, section 13.14[2] (1985); 6 C. Wright & A. Miller, Federal Practice & Procedure, section 1411 at 59-60 (1971)). Stated another way, because an *in rem* proceeding does not establish personal jurisdiction over litigants by its nature, compulsory counterclaims may, but are not required, to be asserted.

A mortgage foreclosure action is, by its nature, an *in rem* proceeding, while an action for default on the debt instrument secured by a mortgage is *in personam*. *See* 3 R. Powell, *The Law of Real Property* sections 463[1], 467 (1987 ed.). A foreclosure proceeding can thus become an *in personam* proceeding if claims are asserted both to recover on a promissory note and to foreclose the mortgage. *Id.*; *see also Romero v. Onewest Bank, FSB*, No. 32,551, 2013 WL 5309570, at *2 (N.M. App. 2013) (holding that if mortgagee sues on note and to foreclose mortgage in the same action, compulsory counterclaims must be asserted or they are waived given the *in personam* nature of the claim on the note); *Pomfret Farms Ltd. Partnership v. Pomfret Associates*, 811 A.2d 655, 658-59 (Vt. 2002) (holding misrepresentation claims were barred by compulsory counterclaim rule when they were not asserted in mortgage foreclosure action because mortgagee also sought *in personam* judgment on the underlying promissory note).

In the Foreclosure Lawsuit, the only claim asserted against the Imler Trust was an *in rem* claim to foreclosure the mortgage.[6] The Imler Trust was not an obligor on the underlying promissory note, and no *in personam* claim was or could have been asserted against it. Consistent with this fact, the judgment entered in the Foreclosure Lawsuit against the Imler Trust was an *in rem* judgment by its express terms. As such, even presuming the claims herein asserted by the Imler Trust would have qualified as compulsory counterclaims in the Foreclosure Lawsuit because they arose out of the same transaction or occurrence, (a question we need not decide), the Imler Trust was not bound to assert the claims in that action and did not undertake to do so. Pursuant to K.S.A. 60-213(a)(2)(B), the compulsory counterclaim rule did not apply to the Foreclosure Lawsuit, and thus cannot serve as an affirmative defense to the instant action as a matter of law.

The parties expend considerable effort debating whether the *manner* of service of process utilized by First Bank in the Foreclosure Lawsuit was sufficient to subject the Imler Trust to the personal jurisdiction of that court. Resolution of that question is immaterial to determining whether the compulsory counterclaim rule is an available affirmative defense in this case.[7] Even if the method of service used in the Foreclosure Lawsuit was sufficient to establish personal jurisdiction over the Imler Trust, the *in rem*

---

[6]The Foreclosure Lawsuit sought both an *in rem* and an *in personam* judgment against American Equities as the petition sought judgment on the note along with foreclosure of the mortgage. Ultimately, only an *in rem* judgment was secured against American Equities. The *in personam* nature of the Foreclosure Lawsuit as to American Equities does not render the action *in personam* as to the Imler Trust, however, against which no *in personam* action was, or could have been, asserted.

[7]Even if the method of service of the Imler Trust in the Foreclosure Case is relevant to the compulsory counterclaim defense, summary judgment would nonetheless have been improperly granted. The Defendants controverted nearly every additional fact addressing whether personal service have been conferred alleged by the Imler Trust in response to the motion for summary judgment, plainly indicating that genuine issues of fact remained in dispute on that subject.

10

nature of the Foreclosure Lawsuit afforded the Imler Trust the option to assert compulsory counterclaims in that action or in a later independent action.[8]

The trial court erred in granting summary judgment in favor of the Defendants to the extent it did so based on the Imler Trust's failure to assert compulsory counterclaims in the Foreclosure Lawsuit.

Point One is granted. Point Two is rendered moot by our resolution of Point One.

***Point Three: The Imler Trust is not Judicially Estopped to Assert its Claims against the Defendants by the Assertion of Similar Claims against American Equities***

The Defendants alleged in their answer and in their motion for summary judgment that the Imler Trust is judicially estopped to assert its claims by virtue of the fact that it asserted inconsistent claims in the American Equities Lawsuit. Judicial estoppel is an affirmative defense. Rule 55.08[9] (identifying estoppel as an affirmative defense).

"Judicial estoppel applies to prevent litigants from taking a position in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at that time." *Banks v. Central Trust and Inv. Co.*, 388 S.W.3d 173, 175

---

[8]The Defendants argue that the Imler Trust's challenge to the manner of service in the Foreclosure Lawsuit constitutes an improper collateral attack on the judgment in the Foreclosure Lawsuit. We disagree. The Imler Trust is not arguing that the method of service used in the Foreclosure Lawsuit was insufficient to bestow *in rem* jurisdiction as to permit foreclosure of the Property. *See Union Central Life Ins. Co. v. Irrigation Loan & Trust Co.*, 73 P.2d 72, 75 (Kan. 1937) (discussing difference between *in rem* and *in personam* actions and methods for service in each and holding that foreclosure action is *in rem* action justifying service in a manner that would not otherwise support an *in personam* judgment). The Imler Trust is merely arguing that the Foreclosure Lawsuit was not an *in personam* action requiring the assertion of compulsory counterclaims. The Defendants have the obligation to establish the essential elements of their affirmative defense of the compulsory counterclaim rule. *Warren v. Paragon Technologies Group, Inc.*, 950 S.W.2d 844, 846 (Mo. banc 1997) (holding that defendants carry the burden of proof on all affirmative defenses). That includes the obligation to establish that the Foreclosure Lawsuit was an *in personam* action requiring the assertion of compulsory counterclaims--a determination that does not turn on the method of service employed, but instead on the nature of the action itself.

[9]All Rule citations are to *Missouri Court Rules, Volume I--State 2014* unless otherwise noted.

(Mo. App. E.D. 2012) (citation omitted). In the American Equities Lawsuit, the Imler Trust alleged that American Equities misrepresented the purpose of the loan to Ms. Imler and that she relied on those representations in consenting to the mortgage on the Property. The Imler Trust secured a default judgment against American Equities and its principals on the basis of those allegations. In the instant case, the Imler Trust alleges that First Bank and its employee DiMiceli misrepresented the purpose of the loan to Ms. Imler and that she relied on those representations in consenting to the mortgage on the Property. The Defendants argue that these allegations are inconsistent with the allegations in the American Equities Lawsuit and that the Imler Trust is thus judicially estopped to assert its present claims. We disagree.

> While judicial estoppel cannot be reduced to a precise formula, the United States Supreme Court has indicated that whether judicial estoppel applies requires the consideration of three factors: "First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept the party's earlier position. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo. App. E.D. 2007) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (citations omitted)). As a matter of law, the Defendants have not established the threshold essential to a judicial estoppel defense-- that the Imler Trust's assertions here are "clearly inconsistent" with its earlier position. In fact, the Defendants' motion for summary judgment concedes as much.

In the suggestions in support of their motion for summary judgment, the Defendants note that "[i]t is at least possible that the [Imler Trust's] intent is to suggest

12

that the Trust received representations from both American Equities and [the Defendants]." [L.F. 41] In fact, the Imler Trust asserted just that in response to the motion for summary judgment. There is nothing "clearly inconsistent" about asserting that both American Equities and the Defendants misrepresented the purpose of the loan to Ms. Imler.

In their Brief, the Defendants alternatively argue that the Imler Trust cannot negate the defense of judicial estoppel by claiming that both the Defendants and American Equities misrepresented the purpose for the First Bank loan since the Imler Trust failed to name the Defendants in the American Equities lawsuit. The Defendants argue that the assertion of misrepresentation claims in two separate lawsuits improperly split the Imler Trust's cause of action. A similar argument was advanced in a footnote in the Defendants' summary judgment pleadings. [L.F. 41] We are not persuaded.

The Defendants did not assert the affirmative defense of improper splitting of causes of action in their answer, rendering the grant of summary judgment on this alternative basis erroneous as a matter of law. *ITT Commercial Fin.*, 854 S.W.2d at 381 (limiting summary judgment to a movant's "properly pleaded affirmative defense[s]"); *Chouteau Auto Mart, Inc. v. First Bank of Missouri*, 148 S.W.3d 17, 26 (Mo. App. W.D. 2004) (holding that raising an affirmative defense in summary judgment pleadings fails to satisfy the pleading requirements set forth in Rule 55.08, and does not operate to amend an earlier filed answer); *Day v. DeVries & Associates, P.C.*, 98 S.W.3d 92, 95 (Mo. App. W.D. 2003) (holding that the non-movant "would have been justified in arguing that [the defendants] were not entitled to summary judgment on the defense of limitations" where

13

the defense was alleged in the answer in only a bare, conclusory fashion, and thus was not properly pled); *Jones v. Landmark Leasing*, *Ltd.*, 957 S.W.2d 369, 375-76 (Mo. App. E.D. 1997) (holding that pleading of facts sufficient to raise an affirmative defense in summary judgment pleadings will not cure the failure to properly plead the defense in an answer).

Moreover, the Defendants' argument misapprehends the law.

The rule against splitting a cause of action applies to bringing separate suits for different elements of damage of the same cause of action and not to bringing separate suits on separate causes of action arising out of the same transaction or occurrence. One may bring separate suits on separate causes of action even if joinder of the separate causes of action in one action is permissible, subject, however, to the power of the court to order consolidation.

. . . 'The rule against splitting a cause of action *applies only where the several causes of action are between the same parties*.' 1 C.J.S. Actions, section 102, p. 1312; see also Restatement of Judgments, Comment b, Sec. 62, saying that the rule it states against splitting 'presupposes a claim and judgment of a single plaintiff against a single defendant.'

*Lee v. Guettler*, 391 S.W.2d 311, 313 (Mo. 1965) (some internal citations and quotation marks omitted) (emphasis added). Plainly, the American Equities Lawsuit and the instant case involve different defendants, requiring us to conclude that the splitting cause of action defense cannot be established as a matter of law.

The Defendants argue that the splitting cause of action doctrine has been applied to separate lawsuits involving different defendants. It is true that a few intermediate appellate decisions have loosely held that "[a] plaintiff may not split a cause of action and try a single claim piecemeal against different defendants one by one." *Miller v. SSI General Sec. Service*, 892 S.W.2d 732, 734 (Mo. App. E.D. 1994) (citing *State ex rel.*

14

*Todd v. Romines*, 806 S.W.2d 690, 692 (Mo. App. E.D. 1991)). However, neither case explains the apparent extension of the splitting cause of action doctrine to include separate actions against different defendants notwithstanding contrary Missouri Supreme Court authority. *Romines* cites *Hagen v. Rapid American Corp*., 791 S.W.2d 452, 455 (Mo. App. E.D. 1990) for the proposition that the splitting cause of action doctrine applies to actions against different defendants. 806 S.W.2d at 692. *Hagen* does hold that "[o]ur rules do not permit a plaintiff to split a cause of action and to try his single claim against different defendants seriatim," but cites no authority for the proposition. 791 S.W.2d at 455. In stark contrast, other intermediate appellate decisions have held, consistent with the Supreme Court's declaration in *Lee*, that "[t]he prohibition against splitting a cause of action is not applicable where parties are different." *McCrary v. Truman Medical Center, Inc*., 943 S.W.2d 695, 697 (Mo. App. W.D. 1997); *see also Irwin v. Bertelsmeyer*, 730 S.W.2d 302, 303 (Mo. App. E.D. 1987) ("[T]he rule against splitting a cause of action applies only where the several causes of action are between the same parties."); *Jones v. Aetna Cas. & Sur. Co*., 497 S.W.2d 809, 814 (Mo. App. 1973) (holding splitting cause of action doctrine had no application where plaintiff's separate lawsuit were brought against different defendants).

Frankly, we have not located a case, nor have the Defendants cited to one, where the splitting cause of action doctrine has been applied to bar a subsequent action against a different defendant, even where the two lawsuits have arisen out of the same transaction or occurrence. In fact, even *Miller* and *Romines,* the cases relied on by the Defendants, find that the doctrine would not apply to the circumstances before the court. *See Miller,*

892 S.W.2d at 734 (holding that cause of action not split where plaintiff brought separate tort and contract claims involving the same assault and injuries because the parties, subject matter and required proof of the allegations in the petition was different in the two cases); *Romines*, 806 S.W.2d 690, 692 (holding that cause of action not split where plaintiff brought separate wrongful death and constructive trust actions though both arose out of death of victim as parties were not the same, nature of theory of relief is dissimilar, and evidence required to prove claims, though in part overlapping, would nonetheless be different). Rather, both *Miller* and *Romines* necessarily recognize by their holdings that a party may "bring separate and distinct causes of action separately, even if they arise out of the same transaction." *Shores v. Express Lending Services, Inc.*, 998 S.W.2d 122, 127-28 (Mo. App. E.D. 1999) (citing *Miller*, 892 S.W.2d at 734).

The splitting cause of action doctrine has no application to separate lawsuits involving different defendants.[10] Intermediate appellate decisions that appear to contemplate the potential application of the splitting cause of action doctrine to *separate* lawsuits involving *different* defendants should be disregarded in light of contrary Supreme Court precedent.

The trial court erred in granting summary judgment in favor of the Defendants to the extent it did so based on the Defendants' assertion that the Imler Trust was judicially

---

[10]Other defenses (i.e. claim and/or issue preclusion, or failure to join a necessary and indispensible party), or procedural avenues (i.e. consolidation) may be implicated by the filing of separate suits involving different defendants arising out of the same transaction or occurrence. However, those defenses or procedural avenues are not at issue in this appeal and need not be addressed. *See, e.g., Korte Const. Co. v. Deaconess Manor Ass'n*, 927 S.W.2d 395, 403-04 (Mo. App. E.D. 1996) (explaining the difference between *res judicta* and the splitting a cause of action doctrine).

16

estopped by its assertions in the American Equities Lawsuit and split its cause of action by suing the Defendants separately from American Equities.

Point Three is granted.

***Point Four: The Trust Certificate and Mortgage Did not Grant First Bank the Authority to Utilize Loan Proceeds for any Indebtedness as to Preclude the Ability to Prove Reliance as a Matter of Law***

The Defendants alleged in their motion for summary judgment that the Imler Trust "provided a trust certificate and a mortgage to [First Bank] which authorized use of the [Property] as security for any debt incurred by [American Equities], representations upon which [First Bank] relied in making the loan to American Equities. However, the Trust now claims that the [Property] was only to be used as security for a loan to develop the [Property] itself, contrary to the express representations it made to [First Bank]." [L.F. 28-29]. In their suggestions in support of the motion for summary judgment, the Defendants explain the argued legal import of their assertion: "The fact that the [Imler Trust] agreed the Property could be used as security for any debt owed to [First Bank] by American Equities demonstrates that the Trust did not rely on any representations from [First Bank] regarding the use to which the loan proceeds were to be put." [L.F. 42]. The Defendants are thus arguing that to the extent any claim asserted by the Imler Trust requires proof of the essential element of reliance, that element cannot be established as a matter of law. *ITT Commercial Fin.*, 854 S.W.2d at 381 ("A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim."). When considering an appeal from summary judgment, we review the record in the light most favorable to the movant. *Id*. at 376.

17

The Defendants rely on the following language in the trust certificate to support their claim for summary judgment:

> . . . as security for the payment of any loans, any promissory notes, or any other or further indebtedness of [American Equities] to [First Bank] at any time owing, however the same may be evidenced.

[L.F. 49, ¶ 22]  The Defendants argue this language authorized the extension of a loan secured by the Property for any purpose, and that First Bank would not have extended the loan to American Equities without this authorization.  The Imler Trust disagrees with the characterization placed on the language drawn from the trust certificate, and argues that the trust certificate merely states that the "'Trustee, for and on behalf of the [Imler Trust], is authorized and empowered on behalf of [the Imler Trust]' to mortgage the Property for the payment of loans incurred by American Equities."  [L.F. p. 152]  In other words, the Imler Trust contends that the trust certificate was meant only to assure First Bank that the Imler Trust had the authority to consent to a mortgage on the Property, and not to afford authorization to extend a loan to American Equities for any purpose.  Stated differently, the Imler Trust argues that the trust certificate did not authorize the Defendants to misrepresent the purpose for a loan to American Equities and merely verified the authority of Ms. Imler to sign a mortgage for the Property on behalf of the Imler Trust whatever the purpose for the loan.

The language relied upon by the Defendants in the trust certificate is taken out of context.  Read in context, the relevant portion of the trust certificate states:

18

**BORROWING CERTIFICATE**. Trustee, for and on behalf of Trust, is authorized and empowered on behalf of Trust:

> **Grant Security**. To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to Trust or in which Trust now or hereafter may have an interest, including without limitation all of Trust's real property and all of Trust's personal property (tangible or intangible), *as security for the payment of any loans, any promissory notes, or any other or further indebtedness of American Equities, L.L.C. to Lender at any time owing, however the same may be evidenced*.

(emphasis added). A plain reading of this provision indicates it was intended to assure First Bank that Ms. Imler had the authority to mortgage the Property on behalf of the Imler Trust, and that her trust authority was not limited to any particular property or to any particular indebtedness of American Equities. This language would operate to prohibit the Imler Trust from arguing that First Bank could not enforce the mortgage because it was executed without authority. Of course, that argument is not being made by the Imler Trust. Rather, the Imler Trust is arguing that regardless of Ms. Imler's authority to mortgage the Property, she would not have consented to do so but for her reliance on misrepresentations about the purpose for the underlying loan to American Equities. The language in the trust certificate relied on by the Defendants is not inconsistent with this assertion. Whether Ms. Imler had the power to mortgage the Property on behalf of the Imler Trust whatever the purpose of the loan to American Equities is an inquiry quite independent from whether Ms. Imler exercised that power in reliance on representations about the purpose for the loan.

19

Defendants argue in their Brief that other language in the trust certificate alternatively supports the grant of summary judgment. In the same paragraph of the trust certificate where the language addressed above appears, the trust certificates continues to provide that "[t]he Trustees have considered the value to Trust of lending collateral in support of *such indebtedness*, and the Trustees represent to Lender that Trust is benefitted by doing so."[11] (Emphasis added.) "Such indebtedness" is not defined, but necessarily refers to the top of the trust certificate where a loan amount, loan date, maturity date, and loan number are specified. This additional language in the trust certificate could be viewed in any of the following ways: Ms. Imler represented that "such indebtedness" would benefit the Imler Trust: (i) because she knew the actual purpose for "the indebtedness" and believed it would benefit the Imler Trust; or (ii) because she had no idea of the purpose for "the indebtedness" but nonetheless represented that it would benefit the Imler Trust; or (iii) because the purpose for "the indebtedness" was misrepresented to Ms. Imler by only American Equities, leading Ms. Imler to mistakenly believe that the loan would benefit the Imler Trust through no fault of the Defendants; or (iv) because the purpose for "the indebtedness" was misrepresented to Ms. Imler by both American Equities and the Defendants, leading Ms. Imler to mistakenly believe that the loan would benefit the Imler Trust. The first three of these possible

---

[11]In their Brief, the Defendants cite to this and other similar language in the trust certificate as an independent basis for this court to affirm the grant of summary judgment even though this language was not relied on in the Defendants' summary judgment pleadings. We address the language because "[a]n order of summary judgment will not be set aside on review if supportable on any theory. The theory need not be one raised or argued by either party and may be raised *sua sponte* by the appellate court, provided the court incorporates principles raised in the petitions." *City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. banc 1995) (internal citations omitted).

constructions would militate against the Imler Trust's claims against the Defendants. The fourth of these possible constructions would not, however. The Defendants cite no authority for the proposition that they are entitled to judgment as a matter of law on a misrepresentation claim based on a trust certification made in reliance on their misrepresentation. Moreover, this summary judgment record does not establish as a matter of uncontroverted fact the context in which the referenced trust certificate language was made, negating the ability to grant summary judgment as a matter of law based on that language.

The trial court erred in granting summary judgment in favor of the Defendants to the extent it did so based on the Defendants' assertion that identified language in the trust certificate authorized First Bank to extend indebtedness to American Equities for any purpose negating the ability to establish reliance as an essential element of some or all of the Imler Trust's claims. This conclusion does not end our inquiry, however, as the Defendants also rely on language in the mortgage to contend that the Imler Trust did not, as a matter of law, rely on purported representations made about the purpose for the loan to American Equities.

The Defendants rely on the following language in the mortgage to support their claim for summary judgment:

> FUTURE ADVANCES. In addition to the Note, this Mortgage secures all future advances made by Lender to Borrower[12] whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower, together with

---

[12]"Borrower" is defined in the mortgage to be American Equities.

21

all interest thereon; however, in no event shall such future advances (excluding interest) exceed in the aggregate $787,500.00.

[L.F. 49, ¶ 23; L.F. 77]  The Defendants argue that this language reflects the Imler Trust's consent to mortgage the Property to secure *any* advances made to American Equities for *any* purpose.  We disagree.

A "future advances" clause in a mortgage or deed of trust is designed to address whether a security instrument will collateralize the advance of funds from a lender to a borrower that occur after the date of the security instrument.  *See, generally*, *Glenn on Mortgages*, Vol. III, sections 392-408 (1943).  Whether a mortgage can securitize future advances is often the subject of statute, as the practice implicates the priority of lien rights that attach to the secured property after the mortgage is recorded but before the future advances are extended.  Consistent with this fact, K.S.A. 58-2336[13] provides that:

> Every mortgage or other instrument securing a loan upon real estate constituting a lien or the full equivalent thereof upon the real estate securing such loan, according to any lawful or well recognized practice, which is best suited to the transaction, may secure future advances and the lien of such mortgage shall attach upon its execution and have priority from time of recording as to all advances made thereunder until such mortgage is released of record: *Provided*, That the lien of such mortgage shall not extend at any one time the maximum amount stated in the mortgage.

However, the priority of a mortgage over future advances applies only to those advances that are contractually or statutorily authorized in connection with the specific debt the mortgage secures.[14]  *First Nat. Bank in Wichita v. Fink*, 736 P.2d 909, 912-13 (Kan. 1987) (recognizing that only future advances authorized by loan documents and

---

[13]We cite to Kansas law because this was a Kansas mortgage.  However, Missouri has a similar statutory provision relating to deeds of trust.  *See* section 443.055.

[14]*See also*, section 443.055.4 (limiting future advances that can be secured to those that are contractual in nature or authorized by statute to reasonably protect the secured party's security interest).

part of the same transaction are protected by the priority of the mortgage). That is because "[t]he main purpose of a mortgage is to insure the payment of the debt for which [it] stands as security . . . ." *MetLife Home Loans v. Hansen*, 286 P.3d 1150, 1154 (Kan. App. 2012) (citation omitted). "It cannot be said too often that [a] mortgage secures a particular debt as distinguished from the mortgagor's general liabilities, present or future." *Glenn on Mortgages*, Vol. III, sections 394 (1943). Thus, a future advances clause does not securitize *all* debts of a borrower of whatever nature, but only securitizes authorized advances made in connection with the specific debt to which the mortgage attaches.

Here, the mortgage defines the specific debt to which it attaches. It defines the "Note" it securitizes as the promissory note dated November 1, 2007 in the amount of $787,500 from First Bank to American Equities. This is the same indebtedness identified on the top of the trust certificate. The future advances clause in the mortgage thus authorized advances made in connection with the identified "Note." That begs the question, however, regarding the *purpose* for the note. The future advances clause is silent on the subject of the purpose for the underlying loan the mortgage secures. The future advances clause in the mortgage does not preclude the Imler Trust from establishing that Ms. Imler consented to the mortgage in reliance on the Defendants' misrepresentation about the purpose for the underlying loan to American Equities.

The trial court erred in granting summary judgment in favor of the Defendants to the extent it did so based on the Defendants' assertion that the future advances clause in the mortgage authorized First Bank to extend indebtedness to American Equities for any

23

purpose negating the ability to establish reliance as an essential element of some or all of the Imler Trust's claims.

Point Four is granted.

### *Point Five: Appeal is Rendered Moot by the Grant of Relief on Other Points*

The Imler Trust alternatively argues that in no event should summary judgment have been granted as to DiMiceli because he was not a party in the Foreclosure Lawsuit, and the mortgage and trust certificate include no representations purporting to have been made to him individually. Given our disposition of Points One through Four on appeal, we need not address Point Five, and it is denied as moot.

### *The Dead Man's Statute does not Provide an Independent Basis for Affirming the Trial Court's Grant of Summary Judgment*

The Defendants argue in their Brief that Missouri's Dead Man Statute provides an additional basis for affirming the trial court's grant of summary judgment. This was not raised as a basis for granting summary judgment in the Defendants' summary judgment motion.[15] However, "[a]n order of summary judgment will not be set aside on review if supportable on any theory. The theory need not be one raised or argued by either party and may be raised *sua sponte* by the appellate court, provided the court incorporates principles raised in the petitions." *City of Washington v. Warren County*, 899 S.W.2d

---

[15]Though the Defendants refer to the Dead Man Statute as an "additional" basis to affirm the grant of summary judgment, they also argue in their Brief that this argument was raised before the trial court, though they do not afford this Court the benefit of any citation to the record on appeal to support their assertion. We do find one passing reference to the Dead Man's Statute in the Defendant's suggestions in support of their motion for summary judgment. In footnote 3, the Defendants simply "question how any of the alleged representations to Ms. Imler will be introduced as evidence in this case, given that her allegations will be subject to Missouri's Dead Man's Statute." [L.F. p. 40]. This can hardly be characterized as an argued basis for the grant of summary judgment that was presented to the trial court. We thus reject the Defendants' argument that the Imler Trust's failure to address this possible basis for the trial court's grant of summary judgment is fatal to its appeal.

863, 868 (Mo. banc 1995) (internal citations omitted).  Thus, we address the merit of the Defendants assertion.

The Defendants argue that under section 491.010,[16] the Imler Trust will not be able to establish the essential element that representations were made to Ms. Imler on which she relied to consent to the mortgage because Ms. Imler is deceased and the statute will operate to preclude the presentation of any evidence regarding statements made about the purpose of the loan.  We disagree with the Defendants' characterization of section 491.010.

Section 491.010 has never operated to prohibit, *per se*, the admission of statements attributable to a deceased party.  The statute in its original form prohibited the *surviving* party to a "contract or cause of action in issue" from testifying "in his own favor or in favor of any party to the action claiming under him . . ." if the other party was deceased. Section 491.010 (RSMo 1939).  At that time, the "purpose of section 491.010 [was] to place all parties to a litigated proceeding on a parity, so that as to transactions with a person now deceased, the surviving party is made incompetent to the extent his testimony might be questioned by the other party, if living."  *DeMott v. Dillingham,* 512 S.W.2d 918, 919 (Mo. App. W.D. 1974).  The statute thus "originally prohibited interested witnesses from testifying about transactions with deceased persons . . . ."  *Coon v. American Compressed Steel, Inc.*, 207 S.W.3d 629, 636 (Mo. App. W.D. 2006).

---

[16]All statutory references are to RSMo 2000, as supplemented, except as otherwise noted.

"[A] 1985 amendment [to section 491.010] completely abandoned that approach."

*Id*. Section 491.010.2 now provides:

> In an [civil suit or proceeding at law or in equity], proceeding or probate matter, where one of the parties to the contract, transaction, occurrence or cause of action, or his agent in such matter is dead . . . , and the adverse party or his agent testifies with respect thereto, then any relevant statement or statements made by the deceased party or agent . . . shall not be excluded as hearsay . . . .

Thus, "[t]he statute now permits an adverse party to testify about dealings with a person who has died . . . ." *Coon*, 207 S.W. 3d at 636. If that occurs, then statements of a deceased person are admissible ***even if they would otherwise be excludable hearsay***.

Thus, section 491.010.2 does not bar the admissibility of statements attributable to a deceased person but rather permits their admission under certain circumstances even if they would otherwise be inadmissible hearsay. It follows that the Dead Man's Statute has no application where statements attributable to a deceased person are independently admissible pursuant to an exception to the hearsay rule. *Coon*, 207 S.W.3d at 636 (citation omitted) ("The current Dead Man Statute has no purpose of excluding evidence historically admissible under 'firmly rooted' exceptions to the hearsay rule.").

The Defendants' Brief on appeal presupposes that: (i) no exception to the hearsay rule will apply to independently permit the admission of statements attributable to Ms. Imler; and (ii) the Defendants will not testify regarding discussions with Ms. Imler as to trigger admissibility of statements attributable to Ms. Imler under section 481.010.2. The Defendants' predictions about what could happen at trial may prove to be correct. However, the Defendants' motion for summary judgment does not set forth

26

uncontroverted facts that permit us to conclude, as a matter of law, that statements attributable to Ms. Imler will not be admitted at trial. Nor is the motion for summary judgment drafted in a manner that requires the Imler Trust to establish that it can prove representations were made by the Defendants about the purpose for the loan without relying on statements attributable to Ms. Imler. Though we are authorized to affirm the grant of summary judgment on a theory not raised with the trial court, the record must permit us to do so consistent with the standards controlling the grant of summary judgment. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* at 376. The Defendants have not sustained that burden in connection with the newly asserted theory that the Dead Man's Statute will preclude proof of an essential element of the Imler Trust's claims.

### *Conclusion*

The trial court's grant of summary judgment in favor of the Defendants on the Imler Trust's claims of misrepresentation, negligent misrepresentation, fraudulent non-disclosure and negligence was erroneous as a matter of law for the reasons herein explained. That Judgment is reversed, and this matter is remanded to the trial court for further proceedings consistent with this Opinion.

_Cynthia L. Martin_____
Cynthia L. Martin, Judge


All concur.

27