

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| ARCH INSURANCE COMPANY, | ) | |
| Respondent, | ) | |
| v. | ) | WD78337 |
| | ) | |
| SUNSET FINANCIAL SERVICES, INC., | ) | FILED: September 29, 2015 |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE JAMES D. YOUNGS, JUDGE

### BEFORE DIVISION THREE: KAREN KING MITCHELL, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND ANTHONY REX GABBERT, JUDGES

The circuit court granted summary judgment in favor of Arch Insurance Company ("Arch") based on a determination that Arch had no duty to indemnify Sunset Financial Services ("SFS") for an arbitration award. On appeal, SFS contends the circuit court erred in finding that indemnity coverage was barred by an insurance policy exclusion. SFS also argues that the court erred in *sua sponte* granting Arch summary judgment on SFS's counterclaim for vexatious refusal to indemnify. For reasons explained herein, we find no error and affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

In early 2008, Theodore Davis, a 56-year-old disabled man, met with Joseph Schoonover of SFS to discuss making investments to supplement his disability

income.  Based on Schoonover's advice, Davis agreed to invest in certain Real Estate Investment Trusts ("REITs") from Behringer Harvard and KBS.  Schoonover advised Davis that such investments would yield a 7% return.

By April 2012, both the Behringer Harvard and KBS REITs suspended distributions and limited the ability of shareholders to redeem their investments.  Davis began a series of complaints to SFS, Behringer Harvard, and KBS seeking redemption of his shares.  Davis also lodged complaints with the Missouri Secretary of State, the Better Business Bureau, and the Securities and Exchange Commission about his inability to get his money back or a return on his investment.[1]

Davis filed several arbitration claims against SFS arising out of Schoonover's recommendations, including: (1) breach of fiduciary duty; (2) common law fraud; (3) negligence; (4) failure to supervise; (5) violations of the Missouri Securities Act of 2003; and (6) violations of the Missouri Merchandising Practices Act.  SFS tendered the arbitration proceeding to Arch, which had issued SFS an errors and omissions insurance policy.  Arch defended SFS subject to full reservation of its right to deny indemnity coverage.  The arbitrator issued an award in favor of Davis and against SFS.

Thereafter, Arch filed an action for a declaratory judgment seeking a ruling that it had no duty to indemnify SFS.  SFS brought a counterclaim seeking

---

[1] In his complaint to the Missouri Secretary of State, Davis stated that he "[t]alked to KBS on [the] phone . . . to see if I was going to get my money, or that I was going to file."  In his complaint to the SEC, he stated that "I feel I should get my money back . . . [W]hen I invest, [and] I don't get the money, I'm very upset."

2

damages for breach of contract and vexatious refusal to pay under Sections

375.296 and 375.420, RSMo,[2] as well as a declaratory judgment that Arch had a

duty to indemnify SFS. Arch alleged that facts established during the arbitration

indicated that a policy exclusion applied to bar coverage. Arch cited Exclusion N,

which provided that the policy did not apply to any "Claim:"

> . . . based upon, arising out of or in any way involving insolvency, receivership, conservatorship, liquidation, bankruptcy, inability or refusal to pay of any organization, entity or vehicle of any kind . . . in which [SFS] has placed or recommended to be placed the funds of a client or account.

Arch argued that this exclusion was applicable because Davis only brought his

claims against SFS due to the REITs' refusal to pay dividends or redeem his shares.

Both parties filed motions for partial summary judgment regarding Arch's duty to

indemnify.

The circuit court concluded that the circumstances surrounding Davis's claim

against SFS "clearly demonstrate that the precipitating events giving rise to [the]

complaints" were the two REITs' suspension of payments and severe limitation of

Davis's ability to redeem his shares. Accordingly, the court was "compelled to

determine" that Davis's claims were "clearly" within the policy exclusion's broad

language. The court ruled that Arch had no duty to indemnify SFS. The court also

*sua sponte* granted Arch summary judgment on SFS's counterclaim for vexatious

---

[2] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

refusal to pay based on its finding that Arch had no duty to indemnify SFS. SFS appeals.

**STANDARD OF REVIEW**

The propriety of summary judgment is an issue of law. *Truck Ins. Exchange v. Prairie Framing, LLC.*, 162 S.W.3d 64, 79 (Mo. App. 2005). Accordingly, we review the trial court's grant of summary judgment essentially de novo. *Id.* We review the record in the light most favorable to the non-moving party, according it "the benefit of all reasonable inferences." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Co.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Nevertheless, if the non-moving party does not contradict the facts relied upon by the moving party in support of its motion, we regard those facts as true. *Truck Ins. Exchange*, 162 S.W.3d at 79.

**ANALYSIS**

**Duty to Indemnify**

In Point I, SFS contends the circuit court erred in granting Arch's motion for summary judgment as to its duty to indemnify. SFS asserts that Exclusion N of the insurance policy does not apply to the claims against it for recommending unsuitable investments. SFS argues that because the underlying arbitration claim did not include a "single allegation" that the REITs were unable or refused to pay and because the arbitration award itself did not refer to such non-payment, Arch cannot show that the insolvency provision in Exclusion N bars coverage.

4

Interpretation of an insurance policy is an issue of law, subject to *de novo* review. *Allen v. Continental W. Ins. Co.*, 436 S.W.3d 548, 553 (Mo. banc 2014). When construing the terms of a policy, we apply the meaning which would be attached by "an ordinary person of average understanding if purchasing insurance." *Id.* at 553–54 (citation omitted). We give the language of the policy its plain meaning. *Id.* at 554. If the language is ambiguous, we resolve the ambiguity against the insurer-drafter. *Id.* An ambiguity exists only when the language is reasonably susceptible to different constructions. *Id.* "Absent an ambiguity, however, Missouri appellate courts do not resort to canons of construction." *Id.* When the language is unambiguous, it must be enforced as written. *Id.*

SFS argues that the plain language of the policy makes clear that Exclusion N applies only to bar certain *claims*, and does not bar coverage for specific types of *losses*. SFS notes that the policy defines "loss" as "monetary judgments, awards or settlements that [SFS] is legally obligated to pay on account of a covered **Claim**." Thus, SFS asserts that because Davis sought to recover a monetary judgment arising out of misrepresentations about unsuitable investments, this is a "loss" as defined by the policy, rather than a "claim." SFS concludes that because Exclusion N does not specifically mention "loss," the exclusion does not apply. In other words, SFS essentially argues that we are limited to considering the language of the Statement of Claim in the underlying arbitration in determining whether the exclusion applies. We disagree with SFS's interpretation.

5

"Claim" is defined under the policy as either "a written demand for *monetary damages*" or "an arbitration commenced by the filing of the statement of claim *in which monetary damages are sought*." (Emphasis added). Damages are necessarily encompassed within a claim; if damages were not sought in the underlying action, the action would not constitute a "claim" under the policy. The damages for which Davis sought to recover were directly connected to the claim, which itself arose out of the REITs' refusal to pay. Moreover, the policy plainly contradicts SFS's assertion that we are limited to the language of Davis's complaint in determining the duty to indemnify because a claim is defined as "an arbitration" which is merely "commenced" by the filing of a Statement of Claim. In other words, if the "arbitration" arises out of or in any way involves the refusal to pay, the exclusion applies to bar coverage – the Statement of Claim is merely one aspect of the arbitration.

In determining whether Davis's claim involved a refusal to pay, we are guided by well-settled principles of Missouri law. An insurer's duty to defend and duty to indemnify are separate and distinct. *Lumber Mut. Ins. Co. v. Reload, Inc.*, 113 S.W.3d 250, 253 (Mo. App. 2003). "An insurer may have a duty to defend claims falling within the policy even if it may not ultimately be obligated to indemnify the insured." *Id.* The duty to defend arises from the potential liability to pay based on the facts as they appear at the outset of the case. *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999). The duty to defend is determined by "comparing the language of

6

the insurance policy with the allegations in the complaint." *Id.* By contrast, the duty to indemnify is determined by "the facts as they are established at trial or as they are finally determined by some other means." *Id.* at 173.

The facts established during the arbitration indicated that Davis's claims against SFS were based upon, arose out of, or at least "involved" the REITs' refusal to pay Davis. During opening statements, Davis's attorney explained that Davis wanted a safe investment, but that the REITs "stopped making payments at all." Davis testified that he "didn't start running into all these problems until [the REITs] stopped paying and [he] started finding out" that he could not redeem his investment. Moreover, Davis was asked about the G REIT, a similar investment he made based upon Schoonover's recommendation. Although the G REIT was of the same type of high-risk investment as the two REITs at issue here, Davis earned a good return on the G REIT and had no complaints regarding its suitability or Schoonover's recommendation.[3]

SFS argues that the present case is identical to *Aks v. Southgate Trust Co.*, No. 92-2193-JWL, 1994 WL 171537 (D. Kan. Mar. 31, 1994), in which the court considered the applicability of a similar policy exclusion. In *Aks*, the court reasoned that it was "more logical" to exclude coverage for types of claims, not for types of damages. *Id.* at *9. Because the underlying claims in *Aks* were for breach of a fiduciary duty, the insolvency exclusion did not apply. *Id.* However, the *Aks* court's analysis appears to conflate an insurer's duty to defend with its

---

[3] Davis invested $38,500 in the G REIT and received approximately $44,000 in return.

duty to indemnify. As noted, the duty to indemnify is determined by reading the petition in the light of information learned later. *Penn-Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 601 n.3 (Mo. App. 2010). If the relevant testimony at the hearing contradicts or *adds facts* necessarily indicating the absence of coverage, then the insurer will have no duty to indemnify the insured. *Id.* at 602.

We find the more persuasive analysis in *Transamerica Ins. Co. v. South*, 975 F.2d 321, 328–29 (7th Cir. 1992), wherein the court rejected the argument that the policy exclusion was inapplicable because the underlying claim was independent of the company's insolvency. The court reasoned that "any such claims would be meritless because the plaintiffs would have suffered no injury and therefore could claim no damage from such a misrepresentation." *Id.* at 328. Because the underlying claims actually arose from the company's insolvency, they were excluded from coverage by the insolvency provision. *Id.* at 328–29. Likewise, the court in *Smith v. Continental Cas. Co.*, No. 07-CV1214, 2008 WL 4462120 (M.D. Pa. Sep. 30, 2008), held that a similar policy exclusion was applicable when the underlying claims were factually predicated on, although facially unrelated to, the company's insolvency. *Id.* at *12.

SFS argues that *South* and *Smith* are inapposite because those cases require proof that a causal link existed between the refusal to pay and the underlying claim. This argument ignores the critical fact that in both *South* and *Smith*, the relevant provisions excluded coverage for claims "arising out of" insolvency of the organization, thus some degree of causation was necessary. In this case, the

8

subject provision is more expansive as it excludes coverage for a claim "in any way involving" an inability or refusal to pay. This language does not require proof of a causal connection. If the claim relates to a refusal to pay "in any way," it is excluded.[4]

In this case, Davis' claims were clearly "based upon, arising out of or in any way involving" the REITs' refusal to pay. Had it not been for the decreased payments, Davis would not have filed suit. This is apparent from the fact that Davis previously accepted Schoonover's earlier recommendation to invest in the G REIT, for which Davis received a 15% return on his investment. Davis complained only when the two REITs at issue here suspended and reduced payouts. The mere fact that his Statement of Claim contains no allegations of insolvency is irrelevant. Although there is no controlling Missouri authority, most jurisdictions have adopted this analysis and rejected SFS's argument that the language of the claim itself must include allegations of insolvency or refusal to pay.[5]

---

[4] *See ACE Capital Ltd. v. Morgan Waldon Ins. Mgmt., LLC*, 832 F.Supp.2d 554, 571 (W.D. Pa. 2011) (stating that even if the claim could not be said to "arise from" the insolvency, "it cannot be argued that the claims do not 'relate to' these insolvencies, irrespective of the fact that the mistakes made by [the insured] occurred prior to the insolvencies.").

[5] *Am. Auto. Ins. Co. v. Valentine*, 131 Fed. Appx. 406, 409–10 (4th Cir. 2005) (unpublished) (reasoning that "[w]hile the participants allege a host of legal claims, they are, at bottom, seeking damages" for the company's inability to pay); *Coregis Ins. Co. v. Am. Health Foundation, Inc.*, 241 F.3d 123, 130–31 (2nd Cir. 2001) ("most courts have held that insolvency exclusions in such policies apply despite the fact that liability for such claims is premised on mistakes made prior to the insolvency"); *Employers Ins. of Wausau v. Tri World Ins. Agency, Inc.*, 134 F.3d 377, 1998 WL 23677, at *3 (9th Cir. 1998) (unpublished) (stating that in the absence of the company's insolvency, "there could be no loss; no cause of action accrued unless and until [the company] became insolvent"); *Transamerica Ins. Co. v. Snell*, 627 So.2d 1275, 1276 (Fla. Dist. Ct. App. 1993) (stating that because the asserted loss was ultimately predicated on insolvency, "any actionable negligence by [the insured] is necessarily related to such insolvency."); *Kleneic v. White Lake Marine Corp.*, 144 A.D.2d 341, 343, 533 N.Y.S.2d 909 (N.Y. App. Div. 1988) (stating that

Point I is denied.

**Vexatious Refusal**

In Points II and III, SFS contends the circuit court erred in *sua sponte* granting Arch summary judgment on SFS's counterclaim against Arch for vexatious refusal to indemnify SFS. Because Arch's motion for summary judgment did not address this claim, SFS argues that it was denied the opportunity to present evidence relevant to Arch's alleged bad faith in handling the claims. SFS also argues that summary judgment was improper on the vexatious refusal claim because bad faith is a fact question for the jury even in the absence of coverage.

To establish a claim for vexatious refusal to pay, SFS must show that Arch's refusal to pay was without reasonable cause or excuse. *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 191 (Mo. App. 2012). "However, where an insurer had no duty to defend or indemnify under the insurance policy, there cannot be a claim for vexatious refusal to defend or indemnify." *Id.* In light of our determination that Arch had no duty to indemnify SFS for the award, we necessarily conclude that the circuit court did not err in granting summary judgment to Arch on SFS's claim of vexatious refusal to pay.

An order of summary judgment will not be set aside on review if it is supportable on any theory. *Imler v. First Bank of Missouri*, 451 S.W.3d 282, 299

the "clear and broad" exclusion language "turns solely on the nature of the activity which underlies the claim"); *Barron v. Scaife*, 535 So.2d 830, 832 (La. Ct. App. 1988) (finding that insolvency provision clearly and unambiguously excluded coverage despite fact that the underlying claim was based on insured's failure to comply with statutory requirements in recommending company); *St. Paul Fire & Marine Ins. Co. v. Cohen-Walker, Inc.*, 320 S.E.2d 385, 388, 171 Ga.App. 542 (Ga. Ct. App. 1984) (stating that the claimant would have had no right of recovery against the insured if the company had been financially able to pay his claim).

(Mo. App. 2014). The theory may be raised *sua sponte* by the court, provided the court incorporates principles raised in the petitions. *Id.* SFS's argument – that bad faith on the part of Arch can still be found in the absence of coverage – is without merit because SFS never raised the issue of bad faith in its pleadings. Instead, SFS's counterclaim alleged vexatious refusal to pay pursuant to Sections 375.296 and 375.420. An issue not raised in the trial court is not preserved for appeal. *Chastain v. James*, 463 S.W.3d 811, 823 (Mo. App. 2015).

Points II and III are denied.

## CONCLUSION

We affirm the grant of summary judgment.

_____
LISA WHITE HARDWICK, JUDGE


ALL CONCUR.

11